**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| MEGAN BROWNING and ALLEN | ) | |
| KESSELRING, on behalf of themselves and | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-CV-00889-HFS |
| | ) | |
| ANHEUSER-BUSCH, LLC, | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| Defendant. | ) | |

**<u>SUGGESTIONS IN SUPPORT OF ANHEUSER-BUSCH, LLC'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 1

    A.    The Ritas Products ............................................................................................ 1

    B.    Alcohol Regulations Allowing for Cocktail Names ........................................ 2

    C.    Plaintiffs' Complaint ....................................................................................... 3

III.    LEGAL STANDARD .............................................................................................. 4

IV.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MMPA ............................ 4

    A.    A-B does not state that Ritas contain liquor or wine. ..................................... 5

    B.    Plaintiffs' theory that A-B omitted a "disclaimer" about the type of alcohol in
          Ritas does not state a claim. ........................................................................... 8

    C.    Plaintiffs' allegations of loss do not satisfy Rule 9(b). .................................. 9

    D.    Non-Missouri consumers cannot assert claims under the MMPA ................. 10

V.      PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD ........................................ 10

VI.     THE BREACH OF EXPRESS WARRANTY CLAIM FAILS ................................... 12

VII.    THE IMPLIED WARRANTY CLAIM FAILS ......................................................... 13

VIII.   PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT ............. 14

IX.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(1) TO
        THE EXTENT THEY LACK STANDING ................................................................ 15

X.      CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Bass Pro Outdoor World*,

    355 F. Supp. 3d 830 (W.D. Mo. 2018) ........................................................... 11, 14

*Anderson v. Ford Motor Co.*,

    2020 WL 1853321 (W.D. Mo. Feb. 14, 2020) ..................................................... 8, 9

*Arthur v. Medtronic*,

    123 F. Supp. 3d 1145 (E.D. Mo. 2015) .................................................................. 12

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009) ................................................................................................ 4

*Aziz v. Allstate Ins. Co.*,

    2015 WL 13688049 (E.D. Mo. Feb. 27, 2015) ..................................................... 14

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007) ................................................................................................ 4

*Blue Buffalo v. Nestle Purina*,

    2016 WL 3227676 (E.D. Mo. June 13, 2016) ..................................................... 5, 9

*Budach v. NIBCO*,

    2015 WL 3853298 (W.D. Mo. June 22, 2015) ..................................................... 14

*Budach v. NIBCO*,

    2015 WL 6870145 (W.D. Mo. Nov. 6, 2015) ....................................................... 13

*Cheslow v. Ghirardelli*,

    445 F. Supp. 3d 8 (N.D. Cal. 2020) ........................................................................ 7

*Cheslow v. Ghirardelli*,

    472 F. Supp. 3d 686 (N.D. Cal. 2020) .................................................................... 7

*Cosgrove v. Blue Diamond*,

    2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) .......................................................... 7

*Cruz v. Anheuser Busch, LLC*,

    2015 WL 3561536 (C.D. Cal. June 3, 2015) .............................................. 1, 2, 6, 7

*Cruz v. Anheuser Busch, LLC*,

    682 F. App'x 583 (9th Cir. 2017) ........................................................ 2

*Ebner v. Fresh*,

    838 F.3d 958 (9th Cir. 2016) ............................................................... 9

*Elfaridi v. Mercedes-Benz USA*,

    2018 WL 4071155 (E.D. Mo. Aug. 27, 2018) ..................................... 13

*FCS Advisors v. Missouri*,

    929 F.3d 618 (8th Cir. 2019) ............................................................... 4

*Fellows v. Am. Campus*,

    2017 WL 2881121 (E.D. Mo. July 6, 2017) ................................... 2, 3, 4

*Fitzgerald v. Polar Corp.*,

    2020 WL 6586628 (D. Mass. Nov. 10, 2020) ...................................... 7

*Flynn v. CTB*,

    2015 WL 5692299 (E.D. Mo. Sept. 28, 2015) .................................... 11

*Frost v. Sioux City*,

    920 F.3d 1158 (8th Cir. 2019) ........................................................... 15

*Gillan v. Wright Med.*,

    *Tech.*, 396 F. Supp. 3d 844 (E.D. Mo. 2019) ................................ 12, 13

*Goldman v. Tapestry*,

    2020 WL 6742780 (E.D. Mo. Nov. 17, 2020) .............................. 9, 10, 14

*Guilford v. Boston Sci.*,

    2020 WL 1668279 (W.D. Mo. Apr. 3, 2020) ...................................... 13

*Hale v. Emerson Electric Co.*,

    942 F.3d 401 (8th Cir. 2019) ............................................................. 10

*Hess v. Chase Manhattan Bank*,

    220 S.W.3d 758 (Mo. 2007) ........................................................... 8, 11

*Howard v. Turnbull*,

    316 S.W.3d 431 (Mo. App. 2010) ...................................................... 14

*Hughes v. Ester C Co.*,

    330 F. Supp. 3d 862 (E.D.N.Y. 2018) ................................................. 5

*Hurst v. Nissan*,

    529 S.W.3d 322 (Mo. 2017) ............................................................................ 5

*Huskey v. Colgate-Palmolive*,

    2020 WL 5518312 (E.D. Mo. Sept. 14, 2020) ................................................ 13

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,

    966 F. Supp. 1525 (E.D. Mo. 1997) ............................................................... 12

*InfoDeli v. Western Robidoux*,

    2017 WL 11517600 (W.D. Mo. Aug. 31, 2017) ............................................ 15

*Johnsen v. Honeywell*,

    2015 WL 631361 (E.D. Mo. Feb. 12, 2015) .................................................. 11

*Johnsen v. Honeywell*,

    2016 WL 1242545 (E.D. Mo. Mar. 29, 2016) ................................................. 8

*Johnson v. Atkins Nutritionals*,

    2017 WL 6420199 (W.D. Mo. Mar. 29, 2017) ............................................. 13

*Kelly v. Cape Cod Potato Chip Co.*,

    81 F. Supp. 3d 754 (W.D. Mo. 2015) ......................................................... 6, 15

*Khaliki v. Helzberg Diamond Shops*,

    2011 WL 1326660 (W.D. Mo. Apr. 6, 2011) ................................................. 4

*Landers v. Monsanto*,

    2017 WL 3531378 (W.D. Mo. Aug. 17, 2017) ............................................. 14

*Lima v. Post*,

    2019 WL 3802885 (D. Mass. Aug. 13, 2019) ................................................ 7

*Lujan v. Defenders of Wildlife*,

    504 U.S. 555 (1992) ..................................................................................... 15

*Martin v. Wrigley*,

    2017 WL 4797530 (W.D. Mo. Oct. 24, 2017) .................................... 5, 6, 7, 14

*Marvin Lumber v. PPG Indus.*,

    223 F.3d 873 (8th Cir. 2000) ....................................................................... 11

*Murphy v. Stonewall Kitchen*,

    503 S.W.3d 308 (Mo. App. 2016) .................................................................. 9

*Neeley v. Wolters Kluwer Health*,

    2013 WL 3929059 (E.D. Mo. July 29, 2013) ........................................................ 10

*Nestle Purina v. Blue Buffalo*,

    181 F. Supp. 3d 618 (E.D. Mo. 2016) ................................................................. 11

*Parker v. Wal-Mart Stores*,

    367 F. Supp. 3d 979 (E.D. Mo. 2019) ................................................................. 13

*Penrose v. Buffalo Trace Distillery*,

    2018 WL 705054 (E.D. Mo. Feb. 5, 2018) ........................................................... 13

*Pfitzer v. Smith & Wesson*,

    2014 WL 636381 (E.D. Mo. Feb. 18, 2014) ......................................................... 12

*Pichardo v. Only What You Need*,

    2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) ........................................................ 7

*Polk v. KV Pharm.*,

    2011 WL 6257466 (E.D. Mo. Dec. 15, 2011) ....................................................... 13

*Pollard v. Remington Arms*,

    2013 WL 3039797 (W.D. Mo. June 17, 2013) ...................................................... 12

*Prescott v. Nestle USA*,

    2020 WL 3035798 (N.D. Cal. June 4, 2020) ........................................................ 7

*Rivas v. Hershey Co.*,

    2020 WL 4287272 (E.D.N.Y. July 27, 2020) ....................................................... 7

*Smith v. Atkins*,

    2018 WL 9868591 (W.D. Mo. May 8, 2018) ....................................................... 15

*Spokeo v. Robins*,

    136 S. Ct. 1540 (2016) ............................................................................... 15

*Steele v. Wegmans*,

    472 F. Supp. 3d 47 (S.D.N.Y. 2020) .................................................................. 7

*Stiles v. Trader Joe's*,

    2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) ........................................................ 7

*Thompson v. Allergan*,

    993 F. Supp. 2d 1007 (E.D. Mo. 2014) ........................................................... 4, 10

Case 4:20-cv-00889-HFS   Document 11   Filed 01/05/21   Page 6 of 24

*Trademark Med. v. Birchwood Labs.*,
    22 F. Supp. 3d 998 (E.D. Mo. 2014)................................................................ 11

*Vogt v. State Farm*,
    963 F.3d 753 (8th Cir. 2020) .................................................................... 11

*Wegmann v. Ethicon*,
    2020 WL 5814475 (E.D. Mo. Sept. 30, 2020)............................................. 14

*Wright v. Bath & Body Works*,
    2012 WL 12088132 (W.D. Mo. Oct. 17, 2012)......................................... 5, 8

*Zaccarello v. Medtronic*,
    38 F. Supp. 3d 1061 (W.D. Mo. 2014) ...................................................... 12

**Statutes**

27 U.S.C. § 205(e) ................................................................................................ 3

27 U.S.C. §§ 201-219 ........................................................................................... 3

R.S. Mo. § 400.2-314(2)(c)................................................................................. 13

R.S. Mo. § 407.020(1) ....................................................................................... 10

**Rules**

Fed. R. Civ. P. 9(b) .............................................................................................. 4

Fed. R. Civ. P. 12(b) .................................................................................... 4, 5, 8

**Regulations**

27 C.F.R. Part 5................................................................................................... 6

27 C.F.R. § 7.11 ................................................................................................... 3

27 C.F.R. § 7.24(a)............................................................................................... 1

27 C.F.R. § 7.29(a)..................................................................................... 1, 3, 5, 6

27 C.F.R. § 25.15 ................................................................................................. 3

85 Fed. Reg. 18,704 ............................................................................................. 6

## I.    INTRODUCTION

The "Ritas" drinks at issue in this case are produced by the United States' largest beer maker, Defendant Anheuser-Busch, LLC ("A-B"). Ritas are malt beverages – meaning the alcohol in them comes from malted grain – with flavors inspired by cocktails, as reflected in their product names and branding. Federal alcohol regulations expressly allow Ritas' "use of a cocktail name as a brand name or fanciful name," like "sparking margarita." 27 C.F.R. § 7.29(a)(7)(iii). Ritas also include a legally required statement of composition identifying them as "flavored malt beverages" on their packaging and advertising. *See id.* at § 7.24(a). None of the Ritas labeling, packaging, or marketing refers to any distilled liquor or wine as an ingredient. Nonetheless, Plaintiffs assert they expected the Ritas to contain tequila or wine because the product names refer to "sparkling margarita," "sparkling rosé," and "sparkling sangria." These implausible allegations do not state a claim under any theory, and the Complaint should be dismissed under Rule 12(b)(6).

In addition to this fundamental defect pervading the entire case, Plaintiffs are unable to meet several essential elements of their statutory and common law claims. As past purchasers of Ritas for whom any alleged future injury is hypothetical at best, they also lack standing to seek injunctive relief, warranting dismissal under Rule 12(b)(1). They further lack standing to assert claims beyond the specific Ritas varieties they claim to have purchased.

## II.    BACKGROUND

### A.    The Ritas Products

A-B produces several of the best-known beer brands in the world, including Budweiser and Bud Light. Compl. ¶¶15-16. A-B's Ritas products have a long-standing and open association with beer. The drinks originated as a spinoff from "Bud Light Lime" when A-B created the "Bud Light Lime Lime-A-Rita" years ago. In that iteration, A-B has already defeated a challenge to the Ritas labels and packaging. *Cruz v. Anheuser Busch, LLC*, 2015 WL 3561536, at *1 (C.D. Cal.

June 3, 2015) (dismissing with prejudice claims that the use of the word "light" misled consumers into believing Ritas were low-calorie drinks when labels disclosed calorie count), *aff'd*, 682 F. App'x 583 (9th Cir. 2017) ("no reasonable consumer would be deceived"). Although the Ritas included "margarita" terminology and imagery, there was no suggestion by the plaintiffs or the courts that this made them deceptive. All treated the term as referring to flavor and style, <u>not</u> to the presence of tequila. 2015 WL 3561536, at *8 ("not a fair comparison" to measure Ritas against "other margarita products and other A-B beverages"); 682 F. App'x at 583-84 (recognizing that a Lime-A-Rita, "normal beer," and "tequila margarita" are distinct products). Even the dissenting judge in *Cruz* agreed that a reasonable consumer would not compare Lime-A-Ritas with a tequila margarita because a tequila margarita "is made with tequila—and is decidedly not a malt beverage." *Id.* at 584 (Christen, J., dissenting).

As A-B discloses, the alcohol in the Ritas products is malt-based, like beer. Ritas do not – and by law would not be permitted to – contain distilled liquors or wine. *See* Part II.B below. A-B does not identify any distilled liquor or wine as an ingredient of the drinks. Rather, Ritas' statement of composition identifies them as "flavored malt beverages" on the packaging, labels, and marketing, including the commercial excerpted in the Complaint.[1] Compl. ¶¶25, 33, 40, 42.

B.    **Alcohol Regulations Allowing for Cocktail Names**

The Alcohol and Tobacco Tax & Trade Bureau (TTB) is charged with creating and

---

[1] The Complaint misleadingly isolates one frame from one commercial for Ritas Spritz in which an actress is standing in a wine cellar. Compl. ¶¶40-41, citing https://www.ispot.tv/ad/IPtP/ritas-spritz-subtle-notes. Plaintiffs omit that, in the rest of the ad, the actress quickly leaves that scene for the informal setting of a couch with friends, who interrupt her very brief description of the taste and focus on the fact that it is "alcohol." In short, the whole point of the ad cited and incorporated by reference in the Complaint is that Ritas Spritz is *different than* wine. Plaintiffs do not allege that they actually viewed or considered any Ritas commercials. They also ignore the fact that the ads close with a notice that Ritas are "FLAVORED MALT BEVERAGES" – just like the packaging notes. *See Fellows v. Am. Campus*, 2017 WL 2881121, at *2 (E.D. Mo. July 6, 2017) (materials incorporated by reference in complaint properly considered on motion to dismiss).

enforcing regulations to, among other things, prohibit consumer deception. *See* 27 U.S.C. §§ 201-219; 27 U.S.C. § 205(e). Under those regulations, "malt beverage labels" expressly are allowed to use "a cocktail name as a brand name or fanciful name …, provided that the overall label does not present a misleading impression about the identity of the product." 27 C.F.R. § 7.29(a)(7)(iii).

TTB regulations also address the contents of different types of alcohol beverages. In particular, a brewer is not authorized to use wine or distilled spirits in the production of malt beverages. 27 C.F.R. §§ 7.11 & 25.15. The prohibition on representing that a malt beverage "contains distilled spirits or is a distilled spirits product," cited in the Complaint, reflects this regulatory restriction on the contents of commercially brewed malt beverages – which Ritas comply with fully. Compl. ¶63 (citing 27 C.F.R. § 7.29(a)(7)).

### C.    Plaintiffs' Complaint

Plaintiff Megan Browning alleges that she purchased 12-packs of Lime-A-Ritas, Peach-A-Ritas, Water-Melon-Ritas, and Ritas Spritz Variety Pack from grocery stores in Kansas City, Missouri, in 2019 and 2020. Compl. ¶12. Plaintiff Allen Kesselring alleges that he purchased 12-packs of the Ritas Spritz Variety Pack, Ritas Sparkling Margaritas Variety Pack, Lime-A-Ritas, and Straw-Ber-Ritas at grocery stores in the St. Louis area in 2019. *Id.* at ¶13. Plaintiffs claim they expected the drinks to contain tequila and wine because of the words "margarita," "sangria," and "rosé" on the packaging.[2] *Id.* at ¶¶12-13.

Both plaintiffs also fault A-B for not providing a "disclaimer" indicating that Ritas do not contain distilled liquor or wine and, instead, are "flavored beer." *Id.* But Plaintiffs acknowledge, as they must, that a panel on the Ritas packaging identifies the drinks as "malt beverages." *Id.* ¶¶

---

[2] Although the Complaint also includes general allegations about Ritas "Mojoto Fizz" and other flavors of Ritas "sparkling margaritas," the named plaintiffs do not claim to have purchased them. *Id.* ¶¶

25, 42. While Plaintiffs assert that they paid a "premium … based on the beverage name[]," they do not identify how much they paid for the 12-packs. *Id.* ¶54. They also do not identify the prices of the alleged "competitor brand[]" 4-packs depicted in the Complaint that – unlike Ritas – are expressly and prominently branded as containing "tequila," "rum," or wine. *Id.* ¶¶45, 48, 51.

Plaintiffs assert claims for: (1) violation of the Missouri Merchandising Practices Act (MMPA); (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) common law fraud; and (5) "unjust enrichment/quasi-contract." They seek damages as well as injunctive relief. Compl., pp. 32-33. They purport to pursue their claims on behalf of a putative nationwide class of individuals who purchased Ritas in enclosed packaging and a sub-class of Missouri purchasers. *Id.* ¶70.

## III. LEGAL STANDARD

To survive dismissal under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition, claims sounding in fraud – including Plaintiffs' MMPA claim – are subject to the particularity requirement of Fed. R. Civ. P. 9(b). *Khaliki v. Helzberg Diamond Shops*, 2011 WL 1326660, at *3 (W.D. Mo. Apr. 6, 2011). To meet this standard, Plaintiffs must identify, at a minimum, the "who, what, where, when, and how of the alleged fraud." *FCS Advisors v. Missouri*, 929 F.3d 618, 620 (8th Cir. 2019).

## IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MMPA

The MMPA requires Plaintiffs to show that: (1) they purchased Ritas; (2) for "personal, family, or household use"; (3) they suffered an "ascertainable loss"; and (4) "the ascertainable loss was the result of an unfair practice." *Thompson v. Allergan*, 993 F. Supp. 2d 1007, 1011-12 (E.D.

Mo. 2014). To state a claim, Plaintiffs must show the packaging is "misleading to the reasonable consumer." *Martin v. Wrigley*, 2017 WL 4797530, at *5 (W.D. Mo. Oct. 24, 2017). This standard cannot be met simply by alleging a "subjective belief that a statement on the defendant's label conveyed the alleged implied message." *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 871 (E.D.N.Y. 2018) (addressing MMPA claim). Dismissal under Rule 12(b)(6) is proper when the plaintiffs fail to show a "likelihood that a reasonable consumer would be deceived." *Wrigley*, 2017 WL 4797530, at *5; *cf. Wright v. Bath & Body Works*, 2012 WL 12088132, at *2-3 (W.D. Mo. Oct. 17, 2012); *Blue Buffalo v. Nestle Purina*, 2016 WL 3227676, at *3 (E.D. Mo. June 13, 2016).

### A. A-B does not state that Ritas contain liquor or wine.

Plaintiffs cannot show a likelihood of deception here based on the face of the Complaint. The Ritas packaging does not identify "tequila," "wine," or "rum" as an ingredient of the drinks. Indeed, those words do not appear anywhere on the packaging at issue. This stands in plain contrast to the so-called "competitor brands" depicted in the Complaint, which prominently tout the presence of those ingredients. *See, e.g.*, Compl. ¶¶45, 48, 51. Without a material, false representation that the beverages contain the types of alcohol Plaintiffs cite, their MMPA claim fails. *See, e.g.*, *Hurst v. Nissan*, 529 S.W.3d 322, 325 (Mo. 2017) (en banc).

Unable to identify any false statement about the alcohol ingredients in the beverages, Plaintiffs resort to their personal assumptions, contending that the words "margarita," "sangria," "rosé," and "mojito" in the brand names imply that the drinks contain tequila, wine, or rum. But their inferences are not reasonable. First, under TTB regulations, "malt beverage labels" expressly are not prohibited from using "a cocktail name as a brand name or fanciful name …, provided that the overall label does not present a misleading impression." 27 C.F.R. § 7.29(a)(7)(iii). Contrary to Plaintiffs' attempt to conflate cocktail names with ingredients, the TTB regulations and guidance they cite treat "distilled spirits terms" and "cocktail terms" as separate categories. *See*

5

ATF Ruling 2002-2 (Apr. 8, 2002)[3] (cited in Compl. ¶69); *see also* 27 C.F.R. Part 5. In the face of the distinctions by the agency charged with regulating alcohol beverage labeling, Plaintiffs' citations to select dictionary definitions or commentary on the meaning of "margarita," "sangria," "rosé," and "mojito" that refer to specific ingredients are beside the point. Compl. ¶¶21-22, 29, 37. *See also Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 760-61 (W.D. Mo. 2015) (rejecting plaintiff's reliance on dictionary definition of "natural"). The prior district court addressing Ritas directly noted that it would be unfair to equate them with tequila margaritas, as they are clearly different products. *Cruz*, 2015 WL 3561536, at *8. The Ritas products do not use any "distilled spirits terms." Moreover, the words "margarita," "sangria," "rosé," and "mojito" are each just one word in the fanciful names for the drinks, used to connote taste and style, <u>not</u> specific ingredients.

In addition, Plaintiffs omit the most pertinent and recent TTB guidance, which <u>rejected</u> a proposed blanket prohibition on the use of "cross-commodity terms." *See* 85 Fed. Reg. 18,704, 18,709-10 (Apr. 2, 2020). Even that proposed rule would not have banned "the use of cocktail names for wines and malt beverages," which is considered "non-misleading." *Id.* at 18,710. The TTB opted to leave its current regulations in effect and thus permit the very type of language at issue in Plaintiffs' Complaint. Contrary to Plaintiffs' theory that A-B somehow "violated" 27 C.F.R. § 7.29(a), the challenged words are permissible "cocktail terms" and are not misleading.

Plaintiffs' inferences also are unreasonable because they isolate words from the packaging while improperly disregarding the full context. *Wrigley*, 2017 WL 4797530, at *3-5. The most prominent words of all on the packaging are "Lime-A-Rita" or "Ritas" (Compl. ¶¶19, 27, 35) – the brand name owned by A-B, a company synonymous with beer. The "cocktail" terms Plaintiffs

---

[3] Available at https://www.ttb.gov/images/pdfs/rulings/2002-2.htm (last visited Jan. 4, 2021).

over-emphasize are one part of the fanciful names used for Ritas products.  *Id*.  The references to "Ritas," "sparkling" drinks, and wide variety of flavors make it obvious that the products are a different type of beverage inspired by – but not the same as – a traditional margarita (or other cocktail).  The courts in the prior Ritas litigation in *Cruz* understood this.  *See* pp. 1-2 above.

In similar cases, courts have rejected the same type of theory Plaintiffs advance here and recognized at the motion to dismiss stage that it is not reasonable to assume a product contains an ingredient that is not mentioned.  Nor can a plaintiff jump to unwarranted conclusions about ingredients based on general flavor words on the packaging.  For example, courts have held:

- The use of "maple" in product name for cereal would not mislead a reasonable consumer to believe it contained maple syrup or maple sugar when those specific ingredients were not referenced on the package, *Stiles v. Trader Joe's*, 2017 WL 3084267, at *4 (C.D. Cal. Apr. 4, 2017); *cf. Lima v. Post*, 2019 WL 3802885, at *9 (D. Mass. Aug. 13, 2019) (similar holding for "Honey Bunches of Oats" cereal);

- Reference to "white" baking chips was not deceptive even though chips did not contain white chocolate, when plaintiff identified no affirmative representation that chocolate was an ingredient, *Cheslow v. Ghirardelli*, 445 F. Supp. 3d 8, 16-17 (N.D. Cal. 2020) and 472 F. Supp. 3d 686, 695-96 (N.D. Cal. 2020), *appeal docketed*, No. 20-16576 (9th Cir. Aug. 17, 2020); *Prescott v. Nestle USA*, 2020 WL 3035798, at *4-5 (N.D. Cal. June 4, 2020); *cf. Rivas v. Hershey Co.*, 2020 WL 4287272, at *5 (E.D.N.Y. July 27, 2020) (similar holding for Kit Kat White candy bars);

- References to "vanilla" on ice cream and drinks were not deceptive when the containers did not mention vanilla beans or vanilla extract, and reasonable consumers associate "vanilla" with a flavor, not an ingredient, *Steele v. Wegmans*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020); *Pichardo v. Only What You Need*, 2020 WL 6323775, at *5 (S.D.N.Y. Oct. 27, 2020); *Cosgrove v. Blue Diamond*, 2020 WL 7211218, at *3-5 (S.D.N.Y. Dec. 7, 2020), *appeal docketed*, No. 20-4090 (2d Cir. Dec. 8, 2020); and

- "[N]o reasonable consumer could rely on a claim of 'real ginger' in a soft drink as a representation that the drink contains chunks of 'ginger root' as opposed to a ginger taste," *Fitzgerald v. Polar Corp.*, 2020 WL 6586628, at *4-5 (D. Mass. Nov. 10, 2020).

The same reasoning applies here.  Ritas never identify distilled liquor or wine as an ingredient, and it is unreasonable for Plaintiffs to construe general words like "margarita," "rosé," and "sangria" as a representation that specific types of alcohol are present, rather than as a flavor

description.  Accordingly, Count I under the MMPA should be dismissed with prejudice.

**B. Plaintiffs' theory that A-B omitted a "disclaimer" about the type of alcohol in Ritas does not state a claim.**

Plaintiffs' allegation that the Ritas do not include a "disclaimer" indicating the drinks "do not contain tequila," wine, or rum and are "just a flavored beer" also fails to state an MMPA claim under Rule 12(b)(6).  Compl. ¶¶12-13, 25, 33, 42.  MMPA claims based on alleged omissions are subject to a heightened standard that requires the plaintiff to make "a greater showing of bad faith or recklessness."  *Bath & Body Works*, 2012 WL 12088132, at *2.  Such claims include a scienter requirement; that is, the plaintiff must allege the defendant "purposefully omitted" a material fact.  *Id.*; *see also Johnsen v. Honeywell*, 2016 WL 1242545, at *3 (E.D. Mo. Mar. 29, 2016).

Plaintiffs do not and cannot meet that requirement here.  They do not allege any "bad faith" or "reckless" conduct in connection with the Ritas packaging.  They identify no basis for any affirmative duty in TTB regulations or otherwise for A-B to announce ingredients that Ritas do <u>not</u> contain.  Further, as noted, TTB regulations bar the addition of distilled spirits or wine as ingredients in malt beverage products like the Ritas, while expressly allowing the use of cocktail names in connection with those same beverages.

Plaintiffs also have not plausibly alleged that the type of alcohol in Ritas is material to the reasonable consumer as required under the MMPA.  *See, e.g.*, *Hess v. Chase Manhattan Bank*, 220 S.W.3d 758, 773 (Mo. 2007); *see also Anderson v. Ford Motor Co.*, 2020 WL 1853321, at *2-3 (W.D. Mo. Feb. 14, 2020).  Plaintiffs assert in conclusory fashion that A-B's "misrepresentations regarding the Products are material" because they "relate[] to the contents" of Ritas (Compl. ¶¶86, 57), but they do not identify any facts establishing that the reasonable or average consumer makes purchasing decisions about Ritas based on the source of the alcohol, rather than a host of other factors such as flavor, ABV, price, package size, or brand loyalty.  Plaintiffs do not even allege

that they went to the store seeking a tequila or wine product when they purchased their Ritas.

Moreover, Plaintiffs acknowledge that the Ritas packaging includes express language describing them as "flavored malt beverages."  Compl. ¶¶25, 33, 42.  In other words, in substance, the "flavored beer" disclaimer Plaintiffs advocate for has been made in the statement of composition that is already legally required.  While Plaintiffs attempt to disregard this information because it is on the "bottom" of the packaging in a "small font," their allegations do not rise to the level of "bad faith" or recklessness.  *Id.* at ¶55.  Notably, the same "flavored malt beverage" disclosure is made in the ad that Plaintiffs incorporate by reference into the Complaint and on the labels that they attempt to avoid by excluding "standalone cans."  *Id.* at ¶¶40-41 & 17 n.1.  Plaintiffs also cannot escape the "fact of life" that malt beverages do not contain distilled liquor or wine, per TTB regulations.  *Blue Buffalo*, 2016 WL 3227676, at *3.  Under these circumstances, where there is no statement on the front of the packaging that Ritas contain tequila, wine, or rum, the "flavored malt beverage" disclosure underscores that any claim of deception is unfounded.[4] *Cf. Ebner v. Fresh*, 838 F.3d 958, 966 (9th Cir. 2016).

### C.  Plaintiffs' allegations of loss do not satisfy Rule 9(b).

As noted above, Rule 9(b) applies to MMPA claims, including the "ascertainable loss" element.  *Goldman v. Tapestry*, 2020 WL 6742780, at *4 (E.D. Mo. Nov. 17, 2020).  Plaintiffs allege that they paid a "premium" for Ritas based on the belief that the drinks "contain tequila, rum, or wine" and either would not have purchased them or would have paid less absent that belief.  Compl. ¶¶54, 90.  However, even as Plaintiffs depict so-called "competitor brands" in their

---

[4] While some courts have declined to dismiss MMPA claims based on an "ingredient list defense" at the 12(b)(6) stage in certain circumstances, *see Murphy v. Stonewall Kitchen*, 503 S.W.3d 308, 312-13 (Mo. App. 2016), A-B is not relying on that "defense" here.  Rather, A-B made disclosures that foreclose Plaintiffs' theory of any omitted "disclaimer" and that are part of the full context that courts agree should be assessed when a plaintiff claims deceptive packaging.

Complaint, they do not plead any facts to support their price "premium" allegation, such as actual comparisons between prices of products that do and do not contain the alcohol ingredients. Claims sounding in fraud require more than the mere conclusions Plaintiffs assert. *Goldman*, 2020 WL 6742780, at *4; *Thompson*, 993 F. Supp. 2d at 1013 (allegations of ascertainable loss involving product pricing must have "sufficient logical [and] factual foundation").

**D. Non-Missouri consumers cannot assert claims under the MMPA.**

Finally, Plaintiffs purport to assert their MMPA claim on behalf of a "nationwide" putative class including members who do not reside in Missouri. That overbroad pleading is barred as a matter of law. It is well-established that the MMPA does not apply to non-Missouri plaintiffs who bought the product at issue outside Missouri, because they lack the requisite connection to trade or commerce "in or from the state of Missouri." R.S. Mo. § 407.020(1); *see also, e.g.*, *Hale v. Emerson Electric Co.*, 942 F.3d 401, 404 (8th Cir. 2019) ("the consumer protection law of each class member's home state governs each consumer protection claim"). Thus, even if the defects discussed above could be cured, which they cannot, the class allegations in Count I should be dismissed or stricken as to out-of-state persons. *See, e.g.*, *Neeley v. Wolters Kluwer Health*, 2013 WL 3929059, at *16 (E.D. Mo. July 29, 2013).

**V.     PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD**

A plaintiff must plead the following elements with particularity to state a claim for fraud under Missouri law: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity…; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Anderson v. Bass Pro Outdoor World*,

355 F. Supp. 3d 830, 840 (W.D. Mo. 2018) (citing *Hess*, 220 S.W.3d at 765).

All of the same deficiencies discussed above with respect to Plaintiffs' MMPA claim also require dismissal of their Count IV for fraud. There is nothing false on the Ritas packaging, and Plaintiffs have not plausibly alleged the type of alcohol is material. Plaintiffs also cannot establish justifiable reliance. The only thing they claim to have relied on are the words "margarita," "rosé," and "sangria" on the packaging. Compl. ¶¶12-13. Their claimed reliance is not reasonable because the statement of composition identifies the drinks as flavored malt beverages; Ritas are obviously distinct from a traditional margarita or glass of wine; and Ritas do not identify (and would not be allowed to contain) tequila or wine as an ingredient. In addition, Plaintiffs have alleged no facts even suggesting any intent by A-B to mislead. Their allegations of injury based on a purported price "premium" also are purely conclusory.

Finally, the economic loss doctrine also bars Plaintiffs' fraud claim. "The Eighth Circuit has held that where a representation concerns the quality or safety of the goods sold, the economic loss doctrine bars the fraud claims because they are 'substantially redundant' with warranty claims." *Nestle Purina v. Blue Buffalo*, 181 F. Supp. 3d 618, 639 (E.D. Mo. 2016) (citing *Marvin Lumber v. PPG Indus.*, 223 F.3d 873, 885 (8th Cir. 2000)); *Trademark Med. v. Birchwood Labs.*, 22 F. Supp. 3d 998, 1002-03 (E.D. Mo. 2014); *Johnsen v. Honeywell*, 2015 WL 631361, at *8 (E.D. Mo. Feb. 12, 2015) (concluding doctrine would apply to consumer transactions); *cf. Vogt v. State Farm*, 963 F.3d 753, 774 (8th Cir. 2020) (noting "the doctrine's traditional moorings [involve] policing the boundaries between warranty and negligence" and declining to extend it to conversion claim). Plaintiffs' warranty counts are based on the exact same allegations as their fraud claim; thus, they are redundant and the fraud claim is barred. *See Flynn v. CTB*, 2015 WL 5692299, at *12 (E.D. Mo. Sept. 28, 2015) (remedy for alleged damages flowing from "frustrated

expectations about the quality" of product "lies with contract and warranty law," not fraud claim); *cf. Pollard v. Remington Arms*, 2013 WL 3039797, at *4 (W.D. Mo. June 17, 2013).

## VI. THE BREACH OF EXPRESS WARRANTY CLAIM FAILS

To state a claim for breach of an express warranty under Missouri law, Plaintiffs must plead (a) a sale of goods; (b) the seller made a statement of fact about the kind or quality of those goods; (c) the statement was a material factor inducing them to purchase the goods; (d) the goods did not conform to the statement; (e) the nonconformity injured Plaintiffs; and (f) Plaintiffs gave timely notice. *Arthur v. Medtronic*, 123 F. Supp. 3d 1145, 1151 (E.D. Mo. 2015). A breach of express warranty claim cannot be based on an omission. *Pfitzer v. Smith & Wesson*, 2014 WL 636381, at *2 (E.D. Mo. Feb. 18, 2014) ("express warranties must be explicit").

First, as discussed above in Part IV.A, there is no "statement of fact" that could give rise to an express warranty falsely promising that Ritas contained distilled liquor or wine. Plaintiffs cannot point to a specific, unequivocal statement or guarantee that Ritas include tequila, rum, or wine and therefore have not identified a warranty that the drinks would contain those ingredients. *See, e.g.*, *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1531 (E.D. Mo. 1997) (breach of warranty claim fails when no false statement is alleged). As discussed, the inferences Plaintiffs draw from isolated terms like "margarita" are not reasonable. Count II for breach of express warranty therefore fails to state a claim because Plaintiffs have not, and cannot, establish a specific promise by conflating a generic cocktail term with a specific ingredient.

Second, to satisfy the "material factor" element, Plaintiffs must plausibly allege that A-B's representations "became the basis of the bargain." *Zaccarello v. Medtronic*, 38 F. Supp. 3d 1061, 1070 (W.D. Mo. 2014); *Gillan v. Wright Med. Tech.*, 396 F. Supp. 3d 844, 849 (E.D. Mo. 2019). Plaintiffs have not identified any facts to support the notion that the type of alcohol in Ritas was

what motivated their purchases.

Third, Plaintiffs do not allege that they provided pre-suit notice of their warranty claim. That is independent grounds for dismissal. *Huskey v. Colgate-Palmolive*, __ F. Supp. 3d __, 2020 WL 5518312, at *6 (E.D. Mo. Sept. 14, 2020); *see also Gillan*, 396 F. Supp. 3d at 849; *Budach v. NIBCO*, 2015 WL 6870145, at *4 (W.D. Mo. Nov. 6, 2015); *Guilford v. Boston Sci.*, 2020 WL 1668279, at *3-4 (W.D. Mo. Apr. 3, 2020).

## VII.  THE IMPLIED WARRANTY CLAIM FAILS

To state a claim for breach of implied warranty under Missouri law, Plaintiffs must allege (1) a merchant sold goods; (2) that were not "merchantable" at the time of sale; (3) they suffered damages; (4) that were caused by the defective nature of the goods; and (5) they provided pre-suit notice. *Polk v. KV Pharm.*, 2011 WL 6257466, at *7 (E.D. Mo. Dec. 15, 2011).

At the outset, merchantability is a minimal standard.  It means that the product must be "fit for the ordinary purposes for which such goods are used." *Elfaridi v. Mercedes-Benz USA*, 2018 WL 4071155, at *10 (E.D. Mo. Aug. 27, 2018) (citing R.S. Mo. § 400.2-314(2)(c)).  The warranty of merchantability "does not require a perfect product, only one of reasonable quality." *Id.*  The Complaint does not plausibly allege that Ritas are "unmerchantable," that is, unfit for human consumption as a refreshment.  *See, e.g.*, *Parker v. Wal-Mart Stores*, 367 F. Supp. 3d 979, 985 (E.D. Mo. 2019); *Penrose v. Buffalo Trace Distillery*, 2018 WL 705054, at *6 (E.D. Mo. Feb. 5, 2018).  When, as here, the complaint "is fundamentally premised on allegations that the products did not meet Plaintiff's expectations," it falls short of stating an implied warranty claim. *Johnson v. Atkins Nutritionals*, 2017 WL 6420199, at *11 (W.D. Mo. Mar. 29, 2017).

To the extent Plaintiffs attempt to premise their implied warranty claim in Count III on an allegation that Ritas do not "conform to the promises" on the "container or label" (Compl. ¶105),

the claim merely restates their breach of express warranty claim and fails for all the same reasons.

Finally, as with their express warranty claim, Plaintiffs' breach of implied warranty claim should be dismissed because they fail to allege they provided the requisite pre-suit notice. *See, e.g.*, *Wegmann v. Ethicon*, 2020 WL 5814475, at *11 (E.D. Mo. Sept. 30, 2020).

## VIII. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT

In Missouri, unjust enrichment requires that: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Bass Pro*, 355 F. Supp. 3d at 839. Plaintiffs' Count V for "unjust enrichment/quasi-contract" fails for several reasons.

First, Plaintiffs cannot pursue a claim for unjust enrichment when they have an adequate remedy at law. Plaintiffs' other claims, including breach of warranty, provide such a remedy, warranting dismissal of Count V. *Aziz v. Allstate Ins. Co.*, 2015 WL 13688049, at *2 (E.D. Mo. Feb. 27, 2015); *cf. Budach v. NIBCO*, 2015 WL 3853298, at *8 (W.D. Mo. June 22, 2015) (dismissing unjust enrichment claim that was "based in part on the warranty" and rejecting plaintiff's argument that the two claims could be pled "in the alternative").

Further, when as here the MMPA claim is based on the same conduct as the unjust enrichment claim, the failure to state a claim under the MMPA shows the circumstances are not "unjust," requiring dismissal of the parallel unjust enrichment claim. *See, e.g.*, *Wrigley*, 2017 WL 4797530, at *6; *Goldman*, 2020 WL 6742780, at *6.

Finally, Plaintiffs do not allege that they conferred any benefit on A-B. Rather, the Complaint acknowledges that they purchased Ritas from third-party retailers. Compl. ¶¶12-13. For this additional reason, they cannot state a claim. *See Landers v. Monsanto*, 2017 WL 3531378, at *7 (W.D. Mo. Aug. 17, 2017); *Howard v. Turnbull*, 316 S.W.3d 431, 436-37 (Mo. App. 2010);

*cf. InfoDeli v. Western Robidoux*, 2017 WL 11517600, at *4 (W.D. Mo. Aug. 31, 2017).

## IX. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(1) TO THE EXTENT THEY LACK STANDING

To have Article III standing to pursue injunctive relief, Plaintiffs must demonstrate an injury in fact that is "likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016). Past injury and hypothetical future injury are insufficient. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As past purchasers of Ritas, who allege they "would not have purchased" the drinks or would have paid less if they had known Ritas did not contain tequila or wine (Compl. ¶¶12-13), Plaintiffs admit they have no real intention of purchasing the products again and have only past injury that is insufficient to establish standing.

Plaintiffs' conflicting allegations that they might buy Ritas again if the alcohol ingredient or marketing changes do not cure this deficiency. Compl. ¶14. With respect to the composition of the product, A-B could not start adding distilled liquor or wine to Ritas, because TTB regulations prohibit it as set forth above. And, the assertion that Plaintiffs <u>might</u> make a future purchase <u>if</u> the packaging changes is "conjectural or hypothetical" at best. *Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th Cir. 2019). "Such 'some day' intentions" do not satisfy Article III. *Id.*

In addition, Plaintiffs lack standing to assert claims involving products they did not purchase (and for which they suffered no loss) – including Ritas "mojito fizz" and several flavors of "sparkling margaritas." Accordingly, even if the Complaint stated any viable claims – which it does not – it would have to be limited to products the named plaintiffs actually purchased. *Cape Cod*, 81 F. Supp. 3d at 763; *Smith v. Atkins*, 2018 WL 9868591, at *7 (W.D. Mo. May 8, 2018).

## X. CONCLUSION

For all the reasons discussed, A-B respectfully requests that the Complaint be dismissed in its entirety with prejudice.

Dated: January 5, 2021                          Respectfully submitted,


                                                **DOWD BENNETT LLP**

                                                /s/ James F. Bennett
                                                James F. Bennett #46826
                                                jbennett@dowdbennett.com
                                                7733 Forsyth Blvd., Suite 1900
                                                St. Louis, MO 63105
                                                Telephone: (314) 889-7300
                                                Facsimile: (314) 863-2111

                                                *Counsel for Defendant Anheuser-Busch, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2021, a copy of the foregoing was served via this Court's electronic filing system, which will send Notices of Electronic Filing to all parties of record.

/s/     James F. Bennett

James F. Bennett
