**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| MEGAN BROWNING and ALLEN KESSELRING, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>ANHEUSER-BUSCH, LLC,<br><br>        Defendant. | Civil Action No.: 4:20-CV-000889-HFS |

## PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO ANHEUSER-BUSCH, LLC'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS ...................................................................................1

III.    LEGAL STANDARD...........................................................................................2

IV.     ARGUMENT ........................................................................................................2

        A.      Plaintiffs' MMPA Claim Should Survive....................................................2

                1.      A-B's Purported Disclaimer Does Not Cure The
                        Misrepresentations ...........................................................................9

                2.      Plaintiffs Have Adequately Pleaded Materiality
                        Under the MMPA ...........................................................................10

                3.      Plaintiffs' Allegations Satisfy Rule 9(b)
                        With Respect to the MMPA............................................................10

        B.      Plaintiffs Have Adequately Pleaded A Claim For Common Law Fraud...11

        C.      Plaintiffs State A Claim For Breach of Express Warranty ........................12

        D.      Plaintiffs State A Claim For Breach of Implied Warranty ........................14

        E.      Plaintiffs' Unjust Enrichment Claim Survives .........................................14

        F.      Plaintiffs Have Article III Standing ..........................................................15

V.      CONCLUSION...................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abels v. Farmers Commodities Corp.*,
259 F.3d 910 (8th Cir. 2001) ...............................................................11

*Anderson v. Ford Motor Co.*,
No. 17-03244-CV-S-BP, 2020 WL 1853321 (W.D. Mo. Feb. 14, 2020)..............................10

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ...............................................................3

*Blue Buffalo Co. v. Nestle Purina Petcare Co.*,
No. 4:15 CV 384 RWS, 2015 WL 3645262 (E.D. Mo. June 10, 2015) ...............................6, 7

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ...............................................................8

*Bratton v. Hershey Co.*,
No. 2:16-CV-4322-C-NKL, 2017 WL 2126864 (W.D. Mo. May 16, 2017) ....................3, 15

*Carnahan v. Am. Family Mut. Ins. Co.*,
723 S.W.2d 612 (Mo. Ct. App. 1987)..............................................................10, 13

*Cheslow v. Ghirardelli Chocolate Co.*,
445 F. Supp. 3d 8 (N.D. Cal. 2020) ...............................................................4

*Coleman v. Watt*,
40 F.3d 255 (8th Cir. 1994) ...............................................................2

*Cruz v. Anheuser-Busch Companies, LLC*,
682 F. App'x 583 (9th Cir. 2017) ...............................................................6

*Dannix Painting, LLC v. Sherwin-Williams Co.*,
732 F.3d 902 (8th Cir. 2013) ...............................................................12

*Fitzgerald v. Polar Corp., No. CV 20-10877-RGS*,
No. CV 20-10877-RGS, 2020 WL 6586628 (D. Mass. Nov. 10, 2020) ...................7

*Garrett v. Cassity*,
No. 4:09CV01252 ERW, 2011 WL 3235633 (E.D. Mo. July 28, 2011)................................15

*Gill Const., Inc. v. 18th & Vine Auth.*,
No. 05-0608-CV-W-SOW, 2006 WL 1449861 (W.D. Mo. May 24, 2006)............................2

Case 4:20-cv-00889-SRB   Document 15   Filed 02/09/21   Page 3 of 23

*Goldman v. Tapestry, Inc.*,
    No. 4:20 CV 748 RWS, 2020 WL 6742780 (E.D. Mo. Nov. 17, 2020)................................15

*Grantham v. Wal-Mart Stores, Inc.*,
    No. 08-3466-CV-S-GAF, 2012 WL 12898186 (W.D. Mo. Feb. 28, 2012) ............................14

*Hawkins v. Nestle U.S.A. Inc.*,
    309 F. Supp. 3d 696 (E.D. Mo. 2018)..........................................................................................5

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020)..........................................................................................5

*Holden Farms, Inc. v. Hog Slat, Inc.*,
    347 F.3d 1055 (8th Cir. 2003) ......................................................................................................2

*Jones v. Monsanto Co.*,
    No. 19-0102-CV-W-BP, 2019 WL 9656365 (W.D. Mo. June 13, 2019)........................15, 16

*Kacocha v. Nestle Purina Petcare Co.*,
    No. 15-CV-5489 (KMK), 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016)................................7

*Kansas City v. Keene Corp.*,
    855 S.W.2d 360 (Mo. 1993) ........................................................................................................13

*Kelly v. Cape Cod Potato Chip Co.*,
    81 F. Supp. 3d 754 (W.D. Mo. 2015) ..........................................................................................3

*Lima v. Post*,
    No. 1:18-cv-12100-ADB, 2019 WL 3802885 (D. Mass. Aug. 13, 2019) ..................................7

*Madenlian v. Flax USA Inc.*,
    No. SACV 13-01748 JVS, 2014 WL 7723578 (C.D. Cal. Mar. 31, 2014) ................................9

*Marty v. Anheuser-Busch Companies, LLC*,
    43 F. Supp. 3d 1333 (2014) ..........................................................................................................5

*McKnelly v. Sperry Corp.*,
    642 F.2d 1101 (8th Cir. 1981) ......................................................................................................13

*Morris v. Novastar Mortg., Inc.*,
    No. 05-00791-CV-W-SOW, 2006 WL 2707349 (W.D. Mo. Sept. 19, 2006)........................12

*Murphy v. Stonewall Kitchen, LLC*,
    503 S.W.3d 308 (Mo. App. 2016) ................................................................................................11

*Nestle Purina PetCare Co. v. Blue Buffalo Co. Ltd.*,
    No. 4:14 CV 859 RWS, 2015 WL 1782661 (E.D. Mo. Apr. 20, 2015) ....................................11

*Pearlstone v. Wal-Mart Stores, Inc.*,
    No. 4:17-cv-02856 (E.D. Mo. Nov. 16, 2018)........................................................12

*Rawa v. Monsanto Co.*,
    No. 4:17CV01252 AFG, 2017 WL 3392090 (E.D. Mo. Aug. 7, 2017) .....................................5

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
    No. 19-cv-03613-WHO, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) ................................8

*Rivas v. Hershey Co.*,
    No. 19-CV-3379(KAM)(SJB), 2020 WL 4287272 (E.D.N.Y. July 27, 2020)........................4

*Rugg v. Johnson & Johnson*,
    No. 17-CV-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018) ................................3

*S & A Tire & Auto, Inc. v. A.U.L. Corp.*,
    No. 4:16 CV 1180 DDN, 2017 WL 345078 (E.D. Mo. Jan. 24, 2017) .................................9

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices & Prod. Liab. Litig.*,
    288 F. Supp. 3d 1087 (D.N.M. 2017) ...................................................................9

*Schilf v. Eli Lilly & Co.*,
    687 F.3d 947 (8th Cir. 2012) ...........................................................................10

*Stiles v. Trader Joe's Co.*,
    No. CV 16–04318 TJH, 2017 WL 3084267 (C.D. Cal. Apr. 4, 2017)..............................6, 7

*Strader v. Progressive Ins.*,
    230 S.W.3d 621 (Mo. App. 2007) .......................................................................3

*Thompson v. Allergan USA, Inc.*,
    993 F. Supp. 2d 1007 (E.D. Mo. 2014)................................................................10

*Thornton v. Pinnacle Foods Grp. LLC*,
    4:16-CV-00158 JAR, 2016 WL 4073713 (E.D. Mo. Aug. 1, 2016) .............................. *passim*

*United States v. Any & All Radio Station Transmission Equip.*,
    207 F.3d 458 (8th Cir. 2000) .........................................................................2, 16

*United States v. Ninety-Five Barrels More or Less Alleged Apple Cider Vinegar*,
    265 U.S. 438 (1924)......................................................................................8

*Webb v. Dr Pepper Snapple Grp., Inc.*,
    No. 4:17-00624-CV-RK, 2018 WL 1955422 (W.D. Mo. Apr. 25, 2018)............................15

*White v. Just Born, Inc.*,
    No. 2:17-CV-04025-C-NKL, 2017 WL 3130333 (W.D. Mo. July 21, 2017)................4, 8, 15

*Zoltek Corp. v. Structural Polymer Group*,
592 F.3d 893 (8th Cir. 2010) .................................................................5

**Statutes**

Mo. Ann. Stat. § 400.2-103(d) ...............................................................13

Mo. Ann. Stat. § 400.2-607(3)(a) ...........................................................13

Mo. Rev. Stat. § 400.2-313(a)-(b) ..........................................................13

Mo. Rev. Stat. § 400.2-314(2) ................................................................14

Mo. Rev. Stat. § 407.020.1 ......................................................................4

**Other Authorities**

27 C.F.R. § 7.29(a)(7)(iii) .........................................................................7

15 C.S.R. § 60–9.010(1)(C) ....................................................................10

15 C.S.R. § 60-9.030(a) ............................................................................5

# I. INTRODUCTION

Defendant Anheuser-Busch, LLC ("A-B") falsely and deceptively represents to consumers that some of its alcoholic beverages contain distilled spirits or wine when they do not. A-B concedes that these products do not contain distilled spirits or wine. Thus, the primary inquiry here is whether it would be impossible for Plaintiffs to prove that a reasonable consumer is likely to believe, based on the names "Sparkling Margarita," "Mojito Fizz," "Rosé Spritz," and "Sangria Spritz," along with other deceptive representations on the front packaging, that these products contain tequila, rum, or wine, respectively. These are commonly used and traditional cocktail names which are defined by the fact that they are made from tequila, rum, or wine. As such, they are likely to deceive a reasonable consumer, and no amount of equivocation by A-B should convince the Court otherwise. Accordingly, A-B's Motion to Dismiss, ("MTD") should be denied.

# II. STATEMENT OF FACTS

The products at issue are A-B's Ritas brand "Margarita," "Mojito," "Rosé," and "Sangria" beverages sold in enclosed packages (collectively, the "Products"). ECF No. 1 ("Compl.") ¶ 17. The Margarita Products are likely to deceive a reasonable consumer into believing they contain tequila based on the following claims and representations made on the front packaging: (1) the name "Lime-a-Rita," (2) the representation "Sparkling Margarita," and (3) images of salted margarita glasses. *Id.* ¶¶ 19, 23. Similarly, the Mojito Products are likely to deceive a reasonable consumer into believing they contain rum based on the following claims and representations made on the front packaging: (1) the name "Mojito Fizz", (2) the representation "Sparkling Classic Cocktails," and (3) images of Collins glasses. *Id.* ¶¶ 27, 31. The wine Products are likely to deceive a reasonable consumer into believing they contain wine based on the following claims and representations made on the front packaging: (1) the names "Rosé Spritz" and "Sangria Spritz," (2) the representations "Sparkling Sangria Cocktail" and "Sparkling Rosé Cocktail," and (3)

images of wine glasses. *Id.* ¶¶ 35, 38-39. Unbeknownst to Plaintiffs and consumers, however, none of the Products contain tequila, rum, or wine. *Id.* ¶¶ 3-5. Instead, they are malt beverages that are just flavored to taste like they contain tequila, rum, or wine. *Id.* ¶¶ 25, 33, 42. Nowhere on the front, side, or top panels of the packaging (the consumer facing panels) does A-B disclose that the Products do not contain distilled spirits or wine, or that the Products are just malt beverages. *Id.* Instead, in fine print on the ***underside*** panel of the packaging (out of consumer view), A-B includes a statement that the Products are just flavored malt beverages. *Id.*

## III. LEGAL STANDARD

On a motion to dismiss it is the defendant's burden to show that the plaintiff cannot state a claim for relief. *Gill Const., Inc. v. 18th & Vine Auth.*, No. 05-0608-CV-W-SOW, 2006 WL 1449861, at *1 (W.D. Mo. May 24, 2006). Moreover, the Court should "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). For purposes of evaluating a motion to dismiss, "[t]he complaint must be liberally construed in the light most favorable to the plaintiff." *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). The court should only dismiss those claims for which it appears "beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." *Holden Farms, Inc. v. Hog Slat, Inc*., 347 F.3d 1055, 1059 (8th Cir. 2003).

## IV. ARGUMENT

### A. Plaintiffs' MMPA Claim Should Survive[1]

A-B acknowledges that the reasonable consumer standard applies to Plaintiffs' MMPA claim. MTD at 5. But the "reasonable consumer" threshold is low at the pleading stage because

---

[1] Plaintiffs oppose A-B's motion in its entirety, except that they will withdraw their claims under the MMPA on behalf of non-Missouri consumers.

{393017.DOCX}2

"[w]hether a reasonable consumer would be deceived by a product label is generally a question of fact that cannot be resolved on a motion to dismiss." *Thornton v. Pinnacle Foods Grp. LLC,* No. 4:16-CV-00158 JAR, 2016 WL 4073713, at *3 (E.D. Mo. Aug. 1, 2016). Indeed, dismissal of false advertising claims is proper only in a "rare situation[.]" *Id.*, at *3 n. 3 (citing *Williams v. Gerber Prods*. Co., 552 F.3d 934, 939 (9th Cir. 2008)). Ultimately, the question of "how a 'reasonable consumer' would perceive certain packaging information [is] a question appropriately addressed on a motion for summary judgment or trial, not a motion to dismiss." *Bratton v. Hershey Co.,* No. 2:16-CV-4322-C-NKL, 2017 WL 2126864, at *7 (W.D. Mo. May 16, 2017) (citing *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. App. 2016)). This is not one of those rare situations where it is impossible to prove that reasonable consumers are likely to be deceived.

*First*, by definition, margaritas contain tequila, mojitos contain rum, and sangria and rosé contain wine. Compl. ¶¶ 21, 28-30, 37-39. Courts often look to common dictionary definitions to shed light on the reasonable consumer standard. *See Strader v. Progressive Ins*., 230 S.W.3d 621, 624 (Mo. App. 2007) ("To ascertain the common meaning of a term, a court may look to a dictionary definition."); *Rugg v. Johnson & Johnson*, No. 17-CV-05010-BLF, 2018 WL 3023493, at *3 (N.D. Cal. June 18, 2018) (looking to dictionary definition of the term "hypoallergic" in context of baby products); *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (same, for the term "diet" in context of soda products).[2] The Bureau of Alcohol, Tobacco and Firearms ("ATF") has also taken this common-sense position regarding the product names. For example, in Compliance Matters 97-1, the ATF notes that cocktail names such as "'Margarita',

---

[2] A-B cites *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015), for the proposition that the Court should not look to dictionary definitions. But the *Kelly* court recognized that the term "natural" is "vague and ambiguous" in the food context. *Id.* at 760. Here, the dictionary definitions of "Margarita," "Mojito," "Sangria," and "Rosé" are clearly in the alcoholic beverage context and are not vague and ambiguous.

or 'Sangria'…. *are understood by the consumer to be distilled spirits or wine based products*".
Compl. ¶ 68; *see also White v. Just Born, Inc.*, No. 2:17-CV-04025-C-NKL, 2017 WL 3130333,
at *6 (W.D. Mo. July 21, 2017) (holding that "the existence of a regulatory prohibition . . . supports
the reasonableness of a consumer's belief[.]).

As a result, A-B's primary argument—that the Products' packaging must explicitly state
they contain "tequila," "wine," or "rum" to be deceptive—fails as a factual matter. The terms
"Margarita," "Mojito," "Sangria," and "Rosé" are express representations that define the Products
as cocktails made with distilled spirits and wine. No stretch of the imagination is required. For this
reason, A-B's reliance on *Cheslow* and *Rivas* is misplaced. In both decisions, the court held that
the word "white" was an adjective that did not define the type of chocolate but rather defined the
**color** of the chocolate. *Rivas v. Hershey Co*., No. 19-CV-3379(KAM)(SJB), 2020 WL 4287272,
at *5 (E.D.N.Y. July 27, 2020); *Cheslow v. Ghirardelli Chocolate Co*., 445 F. Supp. 3d 8, 17 (N.D.
Cal. 2020). Thus, it was unreasonable for a consumer to believe that the product contained white
chocolate based on just the word "white" on the label. *Id.* Here, in contrast, the terms "Margarita,"
"Mojito," "Sangria," and "Rosé" are not adjectives—they are commonly understood nouns and
refer to traditional cocktails containing distilled spirits and wine.

**Second**, A-B's argument is at odds with the reasonable consumer standard, which does not
depend on literal falsity. The plain language of the MMPA makes it unlawful for a person to engage
in "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the
concealment, suppression, or omission of any material fact." Mo. Rev. Stat. § 407.020.1;[3] *see also*
*White*, 2017 WL 3130333, at *3 (recognizing the Missouri Supreme Court's holding that the
MMPA applies broadly to a wide-range of conduct regarding unfairness, unlawfulness, and

---

[3] The MMPA is interpreted broadly to promote its purpose to protect consumers. *Thornton*, 2016
WL 4073713, at *2.

{393017.DOCX}14

deception); *Rawa v. Monsanto Co.,* No. 4:17CV01252 AFG, 2017 WL 3392090, at *3-4 (E.D. Mo. Aug. 7, 2017) (holding that the representation "Up to X Gallons" could deceive a reasonable consumer, even if it was "in some sense true[.]"). Courts across the country are in accord. *See, e.g., Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333, 1342 (2014) (even if the statement "Brewed under the German Purity Law of 1516" was literally true, a reasonable consumer could be misled into believe that Beck's beer is made in Germany, when it is not).

Thus, even if the terms "Margarita," "Mojito," "Sangria," and "Rosé" are not construed as literally false (they are), consumers can reasonably infer that the Products contain distilled spirits or wine. For example, when consumers order margaritas at bars or restaurants, they reasonably expect to receive a cocktail containing tequila. Compl. ¶ 20. The same is true for mojitos, sangrias and rosé. *Id.* ¶¶ 28, 36. Indeed, the International Bartenders Association, the world's largest bartender association and host of cocktail competitions, also recognizes that margaritas contain tequila and mojitos contain rum. *Id.* ¶ 22, 30. In that vein, A-B's argument that competitor products "prominently tout the presence of [alcohol or wine] ingredients" while the Products here do not, misses the point. MTD at 5. The fact that the alcoholic beverage market includes similarly-labeled beverages that actually contain distilled spirits and wine increases the likelihood that consumers believe these Products do as well. Compl. ¶¶ 46, 49, 52.

***Third***, in conducting a reasonable consumer analysis, "the entire mosaic should be viewed rather than each tile separately." *Hesse v. Godiva Chocolatier, Inc*., 463 F. Supp. 3d 453, 466 (S.D.N.Y. 2020) (internal quotation marks omitted); *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n. 4 (8th Cir. 2010) (district court must consider the plausibility of the complaint as a whole, not the plausibility of each individual allegation); *Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696, 705 (E.D. Mo. 2018) ("Narrowly focusing on an aspect of the labeling does not serve the purpose of the MMPA.") Indeed, MMPA regulations recognize the same. 15 C.S.R. §

60-9.030(a) (establishing that the "overall appearance" of an advertisement can deceive consumers). Here, the cocktail names on the packaging are part of the larger message that the Products contain distilled spirits or wine. For example, in addition to the cocktail name "Margarita," the packaging is replete with imagery evoking a margarita, including images of margarita glasses and limes. Compl. ¶¶ 19, 23; *Cruz v. Anheuser-Busch Companies, LLC*, 682 F. App'x 583 (9th Cir. 2017) (holding that based on the product label, including a margarita glass, a reasonable consumer could compare the Lime-a-Rita product to "a tequila margarita").[4]

The "Sangria," and "Rosé" products contain images of wine glasses and fruit, and use the phrase "Spritz," which is a well-known wine-based cocktail. *Id.* ¶¶ 35, 38-39. The Mojitos are also called "Sparkling Classic Cocktails" and bear images of Collins glasses. *Id.* ¶ 27. This imagery and verbiage reinforce the reasonable belief that the Products contain distilled spirits or wine. *Blue Buffalo Co. v. Nestle Purina Petcare Co.*, No. 4:15 CV 384 RWS, 2015 WL 3645262, at *8 (E.D. Mo. June 10, 2015) (addressing challenged words on packaging in conjunction with deceptive imagery); *see also* ATF Compliance Matters 97-1, Compl. ¶ 68 (if there "are pictures of glasses traditionally used to serve distilled spirits products" on labels of malt beverages flavored to taste like distilled spirts products, the labels must "clearly state in readily legible letters and in direct conjunction to the picture of the glass that the product is a flavored malt beverage"). For this same reason, A-B's reliance on *Stiles v. Trader Joe's Co.*, No. CV 16–04318 TJH (KSx), 2017 WL 3084267, at *4 (C.D. Cal. Apr. 4, 2017) is unconvincing. There, the court held that no reasonable consumer would believe the products contained maple syrup in large part because the "Products'

---

[4] *Cruz* involved allegations that Lime-a-Rita was not "light" due to its calorie content, and therefore has no bearing here. It also appears that at the time *Cruz* was decided, the Lime-A-Rita packaging had a "Bud Light Lime" logo, whereas the packaging at issue here does not. Plaintiffs refer to *Cruz* because A-B deceptively cites the dissent in the Ninth Circuit opinion, as well as the underlying district court opinion, as standing for some type of judicial imprimatur on the legality of the Lime-A-Rita labels with respect to the representations here.

packaging, as a whole" did "not juxtapose pictures of maple syrup or maple sugar with the word 'maple.'" *Id.* Here, A-B places the cocktail glasses and other words on the packaging directly next to the names of these traditional cocktails and wines to reinforce the message that they contain distilled spirits or wine.[5]

**Fourth**, A-B's reliance on TTB regulations does not change this analysis. Compliance with federal regulations does not mean that reasonable consumers are not deceived. *See*, *e.g.*, *Blue Buffalo Co.* 2015 WL 3645262, at *5 ("there is no legal authority for the proposition that no reasonable consumer could be misled by labeling that complies with FDA and AAFCO regulations"); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 WL 4367991, at *12 fn. 19 (S.D.N.Y. Aug. 12, 2016) ("Even if Defendant's packaging may have complied with federal, state, and model regulations . . . that does not force the conclusion that a reasonable consumer could not have been misled by Defendant's representations."). Thus, even assuming the Products' packaging complies with TTB regulations, it would not be issue-dispositive. In any event, A-B's packaging does ***not*** comply with TTB regulations, which permit the use of a "cocktail name as a brand name or fanciful name" ***only if*** the "overall label does not present a misleading impression about the identity of the product." 27 C.F.R. § 7.29(a)(7)(iii). A-B fails to explain how the "overall labels" of the Products are not misleading, particularly when, as discussed *infra* at Section IV.A.2, the malt beverage statement is ***underneath*** the packaging, out of consumer view.

---

[5] *Lima v. Post*, No. 1:18-cv-12100-ADB, 2019 WL 3802885, at *9 (D. Mass. Aug. 13, 2019), cited by A-B is inapposite. There, the plaintiff took issue with the fact that honey was a secondary sweetener in the products. The plaintiff admitted the products contained honey. The same was true in *Fitzgerald v. Polar Corp., No. CV 20-10877-RGS,* 2020 WL 6586628, at *4 (D. Mass. Nov. 10, 2020) where the plaintiff conceded that the products contained some amount of ginger. Here, there is no dispute that the Products do not contain distilled liquor or wine.

{393017.DOCX }17

**Fifth**, A-B bears the burden at this stage to demonstrate that reasonable consumers are not likely to be deceived by the challenged representations. However, the best interpretation it can muster is that the cocktail names "Margarita," "Mojito," "Sangria," and "Rosé" are just words used to "connote taste and style, not specific ingredients." MTD at 6. At bottom, A-B asks this Court to set aside common-sense and ignore the plain meaning of these words. If A-B intended to convey a message of taste or style, it would have stated "margarita-flavored malt beverage" or "margarita-style malt beverage" but it chose not to do so. *See* ATF Compliance Matters 97-1 (because they can be deceptive, fanciful names such as "Margarita" or "Sangria" for malt beverages should be described as "Margarita Flavored Malt Beverage" or "Sangria Flavored Malt Beverage"); *see also White*, 2017 WL 3130333, at *3 ("The focus of the statutory scheme [of the MMPA] is on the defendant's conduct."). In the words of the Supreme Court, "[i]t is not difficult to choose statements, designs, and devices which will not deceive." *United States v. Ninety-Five Barrels More or Less Alleged Apple Cider Vinegar*, 265 U.S. 438, 443 (1924).

**Finally**, at best A-B advances a competing theory about how reasonable consumers understand the packaging of the Products. On a motion to dismiss, however, the Court should accept Plaintiffs' theory as the correct one. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009) ("Requiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party . . . and would impose the sort of 'probability requirement' at the pleading stage which *Iqbal* and *Twombly* explicitly reject.") (internal citation omitted). Ultimately, as discussed *supra*, how a reasonable consumer understands the challenged packaging is a question of fact. *See Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-cv-03613-WHO, 2020 WL 1245130, *8 (N.D. Cal. Mar. 16, 2020) (the question of how consumers understand the terms 'grain,' 'corn,' 'soy,' and 'soy protein,' on product labels cannot be resolved on a motion to dismiss.) Similarly, there is

no basis at this juncture to determine that reasonable consumers know that "Margarita," "Mojito," "Sangria," and "Rosé" simply refer to flavor or style, especially in the context of alcoholic beverages.

1. <u>A-B's Purported Disclaimer Does Not Cure The Misrepresentations</u>

The presence of a disclaimer or ingredient list on the bottom of the Products' packaging does not cure the deception. As a threshold matter, A-B makes the specious argument that it is not asserting an "ingredient list defense," presumably because it is not a good one. MTD at 9, n. 4 (citing *Murphy,* 503 S.W.3d at 312-13); *see also Thornton,* 2016 WL 4073713 at *3 (rejecting "ingredient list defense" because it is "plausible that a consumer might rely on the representation 'Nothing Artificial' without looking at the ingredients"). But even if this is not construed as an "ingredient list" defense, and instead a disclaimer, the result is the same. A disclaimer buried in fine print on the underside panel of the package does not put reasonable consumers on notice. *See In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices & Prod. Liab. Litig.*, 288 F. Supp. 3d 1087, 1232 (D.N.M. 2017) ("A reasonable consumer would not look on the bottom of packaging in the same way, because relevant information is rarely there."). Specifically, on the underside panel, it states: "Lime-A-Rita Flavored Malt Beverage" and "Anheuser-Busch."[6] This is insufficient to dispel the reasonable impression that the consumer facing panels of packaging creates. *See Madenlian v. Flax USA Inc*., No. SACV 13-01748 JVS, 2014 WL 7723578, at *3 fn. 3 (C.D. Cal. Mar. 31, 2014) ("The small text at the bottom . . . is much less noticeable than the "All Natural" representation on the front of the box.") In any event, the effect of the disclaimer is

---

[6] A-B also claims its brand name is "synonymous with beer," MTD at 6, implying that consumers should know the Products are malt beverages. The Court should not consider this extraneous fact. *S & A Tire & Auto, Inc. v. A.U.L. Corp*., No. 4:16 CV 1180 DDN, 2017 WL 345078, at *2 (E.D. Mo. Jan. 24, 2017) ("The court may not consider matters outside the pleadings on a motion to dismiss[.]") In any event, A-B buries its name on the underside of the packaging.

a question of fact not suitable for this stage. *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 952 (8th Cir. 2012) (Gruender, J., concurring and dissenting) (it was "a jury question as to whether the size, font, and location of the suicide rate disclosures" in the product packaging were adequate to warn).

## 2. Plaintiffs Have Adequately Pleaded Materiality Under the MMPA

A-B also asserts that Plaintiffs "have not plausibly alleged that the type of alcohol in Ritas is material to the reasonable consumer as required under the MMPA." MTD at 8. This is incorrect. Regulations promulgated on the MMPA define a "material fact" as "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision[.]". 15 C.S.R. 60–9.010(1)(C). Plaintiffs explicitly alleged that they relied on the cocktail names in purchasing the Products and would not have purchased them, or would have paid significantly less for them, if they had known the truth. Compl. ¶¶ 13-14; *see also* ¶ 57 ("The false belief created by Defendant's Products' packaging is a material factor in influencing consumer purchase decisions because it relates to the contents of the Products"); ¶ 96. These allegations are sufficient to show that the presence of distilled liquor or wine in the Products is an important purchasing to them. Ultimately, "[m]ateriality is a question of fact to be determined by the fact-finder." *Carnahan v. Am. Family Mut. Ins. Co.*, 723 S.W.2d 612, 615 (Mo. Ct. App. 1987).[7]

## 3. Plaintiffs' Allegations Satisfy Rule 9(b) With Respect to the MMPA

The sole basis for A-B's Rule 9(b) argument is that Plaintiffs have alleged only conclusory allegations regarding ascertainable loss. MTD at 10. Missouri courts apply the "benefit of the bargain" rule when determining if a plaintiff has suffered an ascertainable loss under the MMPA. *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014) (citations omitted).

---

[7] A-B's reference to *Anderson v. Ford Motor Co.*, No. 17-03244-CV-S-BP, 2020 WL 1853321, at *3 (W.D. Mo. Feb. 14, 2020) is unavailing. *Anderson* was a decision made at summary judgment, where the court made a detailed factual determination on materiality based on extensive factual record developed through discovery. In contrast, no extensive factual record is available now.

1393017.DOCX 10

Under the benefit of the bargain rule as applied to MMPA claims, "Plaintiff need only allege that the actual value of the product as purchased was less than the value of the product as represented to state a claim for an ascertainable loss." *Thornton*, 2016 WL 4073713, at *3. Here, Plaintiffs satisfy this standard, as they allege that they and class members "did not obtain the full value of the Products as represented", Compl. ¶ 100, and that they would "not have purchased [the Products] or would have paid significantly less for [the Products]" had they known the truth. *Id.* ¶¶ 12-13. Based on these allegations, which the Court should accept as true, Plaintiffs have alleged a plausible theory of damages based on an ascertainable loss. *See*, *e.g.*, *Murphy*, 503 S.W.3d 3 at 313 ("Here, because Murphy alleged the mix was worth less than the product as represented, he stated an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule.").

### B.    Plaintiffs Have Adequately Pleaded A Claim For Common Law Fraud

Because A-B summarily argues that the elements of common law fraud cannot be established for the same reasons as those argued for Plaintiffs' MMPA claim, Plaintiffs incorporate by reference their argument made above. A-B's only additional arguments are that (1) Plaintiffs have not alleged facts suggesting intent to mislead, and (2) the economic loss doctrine bars Plaintiffs' fraud claim. Both are unavailing.

***First***, Fed. R. Civ. P. 9(b) makes clear that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "[H]ighly specific allegations" are not required under Rule 9(b), especially when the claim relies on facts that are known only to the defendants. *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001). Thus, allegations that a defendant "knew that their published statements were false, or acted in reckless disregard [or negligence] of the truth or falsity of the statements" are sufficient to show scienter. *See, e.g., Nestle Purina PetCare Co. v. Blue Buffalo Co. Ltd.,* No. 4:14 CV 859 RWS, 2015 WL 1782661, at *11 (E.D. Mo. Apr. 20, 2015). Here, Plaintiffs allege that as the entity responsible for

J393017.DOCX; 11

the manufacturing, marketing, and sale of the Products, A-B knew, or reasonably should have known, that consumers would rely on the common cocktail and wine names on the packaging of the Products and reasonably believe the Products contained tequila, rum, or wine. Compl. ¶ 61. Plaintiffs' allegations concerning A-B's "Subtle Notes" commercial, filmed against the backdrop of a wine cellar, offer additional support to establish the requisite scienter at this stage. *Id.* ¶ 40.

*Second*, "the Eighth Circuit has indicated that the economic loss doctrine applies only to transactions between **commercial parties**." *Pearlstone v. Wal-Mart Stores, Inc.,* No. 4:17-cv-02856 (E.D. Mo. Nov. 16, 2018), ECF No. 32 at 21 [BHI] (emphasis added) (holding that the economic loss doctrine did not bar plaintiff's claim, in part because the doctrine does not apply to consumer transactions); *Dannix Painting, LLC v. Sherwin-Williams Co*., 732 F.3d 902, 908 (8th Cir. 2013) ("[T]he 'economic loss' doctrine ... forbids commercial contracting parties (***as distinct from consumers, and other individuals not engaged in business***) to escalate their contract dispute into a charge of tortious misrepresentation if they could easily have protected themselves from the misrepresentation of which they now complain.") (emphasis added). Indeed, the "the economic loss doctrine is meant to protect sophisticated parties from suing over issues that could have been bargained for. It is not meant to subvert the legislature's efforts to protect customers in their purchase of consumer goods and equip them with a wholly economic remedy." *Pearlstone*, ECF No. 32 at 21. Because Plaintiffs are ordinary consumers, not sophisticated commercial merchants, the economic loss doctrine does not apply to their fraud claim. In any event, the economic loss doctrine does not apply to claims for fraud. *Morris v. Novastar Mortg., Inc*., No. 05-00791-CV-W-SOW, 2006 WL 2707349, at *5 (W.D. Mo. Sept. 19, 2006).

C.    **Plaintiffs State A Claim For Breach of Express Warranty**

To state a claim for breach of express warranty under Missouri law, a plaintiff must show any "affirmation of fact or promise made by the seller to the buyer which relates to the goods" or

any "description of the goods," which becomes part of the basis of the bargain, that the goods shall conform to the affirmation or promise, or the description. Mo. Rev. Stat. § 400.2-313(a)-(b). A-B argues that "Plaintiffs cannot point to a specific, unequivocal statement or guarantee that Ritas include tequila, rum, or wine and therefore have not identified a warranty that the drinks would contain those ingredients." MTD at 12. A-B misconstrues Plaintiffs' allegations. The affirmations of fact or promises being challenged are the cocktail and wine names themselves, which are false and misleading. Compl. ¶ 96. Because the "Sparkling Margarita" products do not contain tequila, a necessary ingredient in margaritas, they are not "Sparkling Margaritas" as promised. The same is true for the "Mojito" and "Sangria" / "Rosé" products, which do not contain rum or wine.

A-B also asserts that Plaintiffs express warranty claim fails because have not alleged that the type of alcohol in the Products was a material factor inducing them to purchase the Products. MTD at 12. As discussed *supra* in Section IV.A.3, this is incorrect. *See* Compl. ¶¶ 13-14 (alleging that Plaintiffs would not have purchased the Products, or would have paid significantly less for them, if they had none the truth); *Carnahan v. American Family Mut. Ins. Co.*, 723 S.W.2d 612, 615 (Mo. App. E.D.1987) (holding that materiality for fraud purposes requires that "the ultimate result would not have followed if there had been no representation").

Lastly, A-B contends that Plaintiffs failed to provide A-B with pre-suit notice of their warranty claim. MTD at 13. But A-B is incorrect that pre-suit notice is required here. Mo. Ann. Stat. § 400.2-607(3)(a) only requires that "the buyer must . . . notify the **seller** of breach[.]" (emphasis added). Mo. Ann. Stat. § 400.2-103(d) defines a "seller" as "a person who sells or contracts to sell goods." Thus, the Supreme Court of Missouri has held that under Mo. Ann. Stat. § 400.2-607(3)(a), "the buyer is only under a duty to notify ***the immediate seller, not the manufacturer***." *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. 1993); *see also McKnelly v. Sperry Corp.*, 642 F.2d 1101, 1107 (8th Cir. 1981) (notice to manufacturer was not required

1393017.DOCX 13

under state express warranty law). Plaintiffs did not purchase the Products from A-B. Compl. ¶ 12,13. As such, notice to A-B was not required under the plain language of the statute.

### D. Plaintiffs State A Claim For Breach of Implied Warranty

A-B contends that Plaintiffs' implied warranty claim fails because "[t]he Complaint does not plausibly allege that Ritas are 'unmerchantable,' that is, unfit for human consumption as a refreshment." MTD at 13 (citing Mo. Rev. Stat. § 400.2-314(2)(c)). However, A-B misconstrues the pleadings. Plaintiffs have not alleged an implied warranty claim based on Mo. Rev. Stat. § 400.2-314(2)(c). Rather, the claim is predicated on Mo. Rev. Stat. § 400.2-314(2)(f), which states that merchantable goods must "conform to the promises or affirmations of fact made on the container or label if any." Mo. Rev. Stat. § 400.2-314(2)(f); Compl. ¶ 105. A plaintiff may state a claim for breach of implied warranty under any prong of Mo. Rev. Stat. § 400.2-314(2). *See Grantham v. Wal-Mart Stores, Inc.,* No. 08-3466-CV-S-GAF, 2012 WL 12898186, at *3 (W.D. Mo. Feb. 28, 2012). Therefore, Plaintiffs need not demonstrate that the Products are not "fit for the ordinary purpose." Instead, Plaintiffs allege that because the Products do not conform to the promises or affirmations of fact made on them, A-B has violated its implied warranty. Without analysis, A-B contends that the claim fails for the same reasons as Plaintiffs' express warranty claim. As discussed above, Plaintiffs' express warranty claim survives. So too should this claim.

Lastly, A-B again argues lack of pre-suit notice. MTD at 14. For the same reasons discussed in Section IV.C, pre-suit notice is not required for Plaintiffs' implied warranty claim.

### E. Plaintiffs' Unjust Enrichment Claim Survives

A-B avers that Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs have an adequate remedy at law. MTD at 14. But a plaintiff is entitled to bring an unjust enrichment claim as an alternative ground for relief, even if plaintiff may have an adequate remedy at law. *Thornton,* 2016 WL 4073713, at *4 (denying motion to dismiss unjust enrichment and MMPA

claims, holding that the claims could be pled in the alternative); *Jones v. Monsanto Co*., No. 19-0102-CV-W-BP, 2019 WL 9656365, at \*4 (W.D. Mo. June 13, 2019) (same) (citing F.R.C.P. 8(d)(3)). Moreover, A-B's argument that Plaintiffs did not confer a benefit on it because they purchased directly from third party retailers is also unavailing. Courts in Missouri consistently reject this argument because "there is no requirement for an unjust enrichment claim that the plaintiff conferred a benefit directly on the defendant[.]" *See, e.g*., *Garrett v. Cassity*, No. 4:09CV01252 ERW, 2011 WL 3235633, at \*9 (E.D. Mo. July 28, 2011); *Webb v. Dr Pepper Snapple Grp., Inc*., No. 4:17-00624-CV-RK, 2018 WL 1955422, at \*6 (W.D. Mo. Apr. 25, 2018) (same) (citing cases). Accordingly, Plaintiffs' unjust enrichment claim is adequately pleaded.

## F. Plaintiffs Have Article III Standing

A-B argues that Plaintiffs lack Article III standing to pursue injunctive relief because they only allege that they "might make a future purchase if the packaging changes[.]" MTD at 15. A-B miscites the Complaint. Plaintiffs both allege that they "wish to and are likely to continue purchasing the Products in the future" but at this time, are "unable to rely with confidence on Defendant's packaging of the Products in the future." Compl. ¶ 14. Such allegations are sufficient to confer Article III standing for injunctive relief. *See White,* 2017 WL 3130333, at \*10 (holding that plaintiff could pursue injunctive relief when alleging "if [defendant] changes its practices, he is likely to buy the products in the future."); *Bratton,* 2017 WL 2126864, at \*9 (same).

A-B also contends that Plaintiffs lack standing to pursue challenges to the Products they did not purchase. MTD at 15.  The Missouri Supreme Court has not addressed whether a consumer may bring a claim under the MMPA for products not purchased. However, Missouri federal court recently held that "the appropriate inquiry for determining if she has standing as to products that she did not personally purchase is 'whether there is sufficient similarity between the products purchased and not purchased.'" *Goldman v. Tapestry, Inc*., No. 4:20 CV 748 RWS, 2020 WL

{393017.DOCX }15

6742780, at *2 (E.D. Mo. Nov. 17, 2020) (citing *Davidson v. Kimberly-Clark Corp.*, 2014 WL 3919857, at *6 (N.D. Cal. Aug. 8, 2014)). Here, Plaintiffs purchased multiple flavors of the Margarita Products, as well as the Ritas Spritz Variety Pack. Compl. at ¶¶ 12-13. The fact that they may not have purchased the remaining flavors of the Margarita Products, or the Mojito Product, is of no event because those Products are substantially identical to the ones purchased. For example, ***all*** of the Margarita Products use the prominent representation "SPARKLING MARGARITA," contain an image of a margarita glass on the front packaging, and uniformly do not contain tequila, regardless of the flavor. That they may be pomegranate versus lime flavored is irrelevant to Plaintiffs' theory of harm because Plaintiff is only challenging the lack of tequila in the Products, not the flavor. The same theory of harm applies to the Mojito Products, which do not contain rum. Finally, the Court could defer ruling on this issue until class certification. *Jones*, 2019 WL 9656365, at *10 (W.D. Mo. June 13, 2019). Thus, Plaintiff has standing to challenge all Products.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny A-B's MTD.


DATED: Feburary 9, 2021

By: */s/ Tim E. Dollar*
    Tim E. Dollar

Tim E. Dollar, Missouri Bar No. 33123
**DOLLAR BURNS & BECKER, L.C.**
1100 Main Street, Suite 2600
Kansas City, MO 64105
Telephone: (816) 876-2600
Facsimile: (816) 221-8763
Email:  timd@dollar-law.com


*Counsel for Plaintiffs*

{393017.DOCX}16

## CERTIFICATE OF SERVICE

I hereby certify that on this date, February 9, 2021, the foregoing document was filed electronically. Notice of the filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

*/s/ Tim Dollar*
Tim Dollar