## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

MEGAN BROWNING, ALLEN KESSELRING,
TANYA COOPER, JOSEPH ROSE, TERRI
COLE, and JUDY SCATURRO, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

  vs.

ANHEUSER-BUSCH, LLC,

        Defendant.

Case No. 4:20-CV-00889-SRB

## SUGGESTIONS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND......................................... 2

III.   PRINCIPLE SETTLEMENT TERMS ............................................................ 4

IV.   THE COURT SHOULD CERTIFY THE NATIONWIDE SETTLEMENT CLASS........ 7

    A.    The Numerosity Requirement – Rule 23(a)(1) – is Satisfied ................................. 7

    B.    The Commonality and Predominance Requirements – Rule 23(a)(2) and (b)(3)... 7

    C.    The Typicality Requirement – Rule 23(a)(3) – is Satisfied ................................... 9

    D.    The Adequacy Requirement – Rule 23(a)(4) – is Satisfied ................................... 9

    E.    Certification Of A Rule 23(b)(2) Injunctive Relief Class Is Also Warranted ...... 10

V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ........... 10

    A.    Rule 23(e)(2)(A) - Plaintiffs and Class Counsel Have Adequately Represented the Class ........................................................................................................................ 11

    B.    Rule 23(e)(2)(B) – The Settlement Is the Product of Arms'-Length, Informed Negotiations ....................................................................................................... 12

    C.    Rule 23(e)(2)(C) – The Relief Provided For The Class Is Adequate .................. 13

        1.    The Costs, Risks, And Delay Of Trial And Appeal.................................. 13

        2.    The Effectiveness Of Any Proposed Method Of Distributing Relief ....... 15

        3.    The Terms and Timing Of Any Proposed Award Of Attorney's Fees ..... 16

    D.    Rule 23(e)(2)(D) – Class Members Are Treated Equitably ................................ 16

    E.    The Second *Van Horn* Factor – A-B's Financial Condition................................ 17

    F.    The Fourth *Van Horn* Factor - No Opposition To The Settlement...................... 17

VI.   THE COURT SHOULD APPROVE THE NOTICE PLAN AND APPOINT EPIQ AS THE SETTLEMENT ADMINISTRATOR ...................................................................... 17

VII.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL ............... 19

VIII.   CONCLUSION.................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases**                                             **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)............................................................................................8

*Avritt v. Reliastar Life Ins. Co.*,
  615 F.3d 1023 (8th Cir. 2010) ..........................................................................8

*In re BankAmerica Corp. Sec. Litig.*,
  210 F.R.D. 694 (E.D. Mo. 2002) ..............................................................12, 15

*Carlotti v. ASUS Computer Int'l*,
  No. 18-cv-03369-DMR, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019)................16

*Cirese Inv. Co. v. Qwest Commc'ns Co., LLC*,
  No. 4:00-0042-CV-W-HFS, 2013 WL 12284915 (W.D. Mo. Jan. 18, 2013) ........16

*Claxton v. Kum & Go, L.C.*,
  No. 6:14-CV-03385-MDH, 2015 WL 3648776 (W.D. Mo. June 11, 2015) .................8, 9, 13

*Cleveland v. Whirlpool Corp.*,
  No. 20-cv-1906, 2021 WL 5937403 (D. Minn. Dec. 16, 2021) ..............................13

*Cooper v. Integrity Home Care, Inc.*,
  No. 4:16-CV-1293-DGK, 2018 WL 3468372 (W.D. Mo. July 18, 2018)................7

*In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*,
  No. 16-02709-MD-W-GAF, 2021 WL 5546459 (W.D. Mo. Feb. 8, 2021) ............18

*Fath v. Am. Honda Motor Co.*,
  No. 18-CV-1549, 2019 WL 6799796 (D. Minn. Dec. 13, 2019).............................11

*Heilman v. Perfection Corp.*,
  93 F. Supp. 2d 1311 (W.D. Mo. 2000) ..................................................................13

*Heldt v. Payday Fin., LLC*,
  No. 3:13-CV-03023-RAL, 2016 WL 96156 (D.S.D. Jan. 8, 2016).........................12

*Holt v. CommunityAmerica Credit Union*,
  No. 4:19-CV-00629-FJG, 2020 WL 12604383 (W.D. Mo. Sept. 4, 2020) ............10

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) ...........................................................................14, 15

*Lane v. Lombardi*,
  No. 2:12–cv–4219–NKL, 2012 WL 5462932 (W.D. Mo. Nov. 8, 2012).................9

Case 4:20-cv-00889-SRB   Document 64   Filed 07/18/22   Page 3 of 26

*Marshall v. Nat'l Football League*,
    787 F.3d 502 (8th Cir. 2015) ...............................................17

*Pollard v. Remington Arms Co.*,
    320 F.R.D. 198 (W.D. Mo. 2017)...........................................19

*In re Pre-Filled Propane Tank Antitrust Litig.*,
    No. 14-02567-MD-W-GAF, 2019 WL 7160380 (W.D. Mo. Nov. 18, 2019) .........................7

*Rawa v. Monsanto Co.*,
    No. 4:17CV01252 AGF, 2018 WL 2389040 (E.D. Mo. May 25, 2018).............................8, 16

*Ray v. Lundstrom*,
    No. 4:10CV3177, 2012 WL 5458425 (D. Neb. Nov. 8, 2012)................................15

*Risch v. Natoli Eng'g Co.*,
    No. 4:11CV1621 AGF, 2012 WL 3242099 (E.D. Mo. Aug. 7, 2012) ...............................7, 17

*Sandusky Wellness Ctr., LLC v. Medtox Scientific, Inc.*,
    821 F.3d 992 (8th Cir. 2016) ...............................................7

*Swinton v. SquareTrade, Inc.*,
    454 F. Supp. 3d 848 (S.D. Iowa 2020) ...............................................13

*Swinton v. SquareTrade, Inc.*,
    No. 4:18-CV-00144-SMR-SBJ, 2019 WL 617791 (S.D. Iowa Feb. 14, 2019)................11, 17

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*,
    716 F.3d 1057 (8th Cir. 2013) ...............................................11

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ...............................................11, 13, 17

## Other Authorities

4 Newberg and Rubenstein on Class Actions § 13:10 (5th ed.) ...............................................10

Fed. R. Civ. P. 23(a)(2)...............................................7

Fed. R. Civ. P. 23(a)(4) ...............................................9

Fed. R. Civ. P. 23(b)(3)(C) ...............................................8

Fed. R. Civ. P. 23(c)(2)(B) ...............................................17

Fed. R. Civ. P. 23(e)(1)(B) ...............................................10

Fed. R. Civ. P. 23(e)(2)(A)-(D) ...............................................11

iii

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................................19

Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment...............................12

iv

Plaintiffs Megan Browning, Allen Kesselring, Tanya Cooper, Joseph Rose, Terri Cole, and Judy Scaturro ("Plaintiffs") hereby submit these Suggestions in Support of Plaintiffs' Unopposed[1] Motion for Preliminary Approval of Class Settlement.

## I.      <u>INTRODUCTION</u>

This is a consumer-fraud class action in which Plaintiffs allege that Defendant Anheuser-Busch, LLC ("A-B")[2] falsely advertised its RITAS™ brand Margarita, Spritz, and Fizz products (the "Products") as containing distilled liquor or wine, when they do not. After defeating motions to dismiss in multiple jurisdictions, successfully opposing a motion to transfer this Action to the Eastern District of Missouri, and conducting discovery necessary to assess their claims, Plaintiffs negotiated a nationwide class settlement over the course of two day-long mediation sessions under the auspices of well-respected mediator Jack T. Bangert. These efforts have culminated into a settlement that provides meaningful monetary and injunctive relief for class members. Specifically, A-B has agreed to modify its labeling, packaging, and advertising of the Products to clarify that the Products are only malt beverages and do not contain distilled spirits or wine. Moreover, the settlement provides class members who purchased any of the Products during the Class Period the opportunity to recover up to $21.25 per Household, depending on the number of units purchased and whether the class member has Proof of Purchase.

As further outlined below, the proposed Settlement is fair, adequate and reasonable, and should be preliminarily approved under Fed. R. Civ. P. 23(e). In addition, the proposed Settlement Class and Injunctive Relief Class should be certified for settlement purposes because all of the

---

[1] Plaintiffs have conferred with Defendant Anheuser-Busch, LLC ("A-B") and A-B is **unopposed to the relief requested in this motion.**

[2] All capitalized words and terms contained herein shall have the meanings assigned to them in the Settlement Agreement, unless otherwise noted or defined here.

requirements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Moreover, the proposed Notice Plan, which consists of direct, print publication, and digital notice, is designed to reach over 70 percent of the class and will adequately advise class members of the terms of this Settlement and their rights thereunder, in compliance with due process and all other applicable laws.

Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement, provisionally certify the Settlement Class and Injunctive Relief Class, provisionally appoint Dollar, Burns, Becker, & Hershewe L.C. and Faruqi & Faruqi, LLP as Class Counsel and Plaintiffs as Class Representatives, appoint Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the Settlement Administrator, approve the Notice Plan and authorize dissemination of notice to class members, and schedule a Final Approval Hearing and related events.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On September 11, 2020, Plaintiffs Tanya Cooper and Joseph Rose (the "*Cooper* Plaintiffs") commenced a consumer protection class action suit in the United States District Court for the Southern District of New York against A-B styled as *Cooper et al. v. Anheuser-Busch, LLC*, No. 7:20-cv-07451-KMK, in connection with A-B's marketing and sale of the Products (the "*Cooper* Action"). On September 17, 2020, Plaintiff Terri Cole commenced a similar consumer protection class action in the United States District Court for the Central District of California against A-B styled as *Terri Cole v. Anheuser-Busch, LLC,* No. 2:20-cv-08545, also in connection with A-B's marketing and sale Products (the "*Cole* Action").[3] On November 6, 2020, Plaintiffs Megan Browning and Allen Kesselring ("*Browning* Plaintiffs") commenced a similar consumer protection class action against A-B in this District styled as *Browning et. al., v. Anheuser-Busch, LLC*, No.

---

[3] On January 14, 2021, Plaintiff Cole voluntarily dismissed the *Cole* Action, without prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

2

20-cv-00889-SRB, also in connection with A-B's marketing and sale of the Products (the "*Browning* Action").

On January 5, 2021, A-B filed a Motion to Dismiss in the *Browning* Action, and on February 9, 2021, the *Browning* Plaintiffs opposed the *Browning* MTD. On March 23, 2021, A-B filed a Motion to Stay and Transfer the *Browning* Action to the Eastern District of Missouri ("Transfer Motion"). On April 19, 2021, the *Browning* Plaintiffs opposed the Transfer Motion. On May 4, 2021, the Court entered an Order denying the Transfer Motion. On May 13, 2021, the Court entered an Order granting in part and denying in part the *Browning* MTD.[4]

Thereafter, the Parties agreed to attend mediation with well-respected mediator Jack T. Bangert of Kutak Rock, LLP. Declaration of Tim E. Dollar ("Dollar Decl.") ¶ 3. Prior to the mediation, Plaintiffs served discovery requests and obtained discovery relating to, *inter alia*, sales and damages of the Products. *Id.* ¶ 4. The first mediation session occurred on July 7, 2021, and lasted all day. *Id.* ¶ 5. However, the Parties were unable to reach a settlement that day. *Id.* Subsequently, Plaintiffs continued to obtain relevant discovery and continued settlement discussions with A-B under the auspices of Mr. Bangert. *Id.* ¶ 6. Class Counsel also retained a highly experienced economist to better understand potential class-wide damages. Declaration of Timothy J. Peter ("Peter Decl.") ¶ 5. The Parties were then ultimately able to reach a settlement in principle on the terms of recovery for the Settlement Class, and only thereafter scheduled a second mediation with Mr. Bangert to negotiate a cap on the amount of attorneys' fees and costs, and Class Representative Service Awards, that Class Counsel and Plaintiffs may seek, respectively. Dollar Decl. ¶ 7. On December 21, 2021, the Parties attended the second mediation session, but

---

[4] Of note, the *Cooper* Plaintiffs also defeated a motion to dismiss in the *Cooper* Action.

were unable to reach agreement on caps. *Id.* ¶ 8. Subsequent to the second mediation, the Parties continued to negotiate under the auspices of Mr. Bangert. *Id.*

On March 22, 2022, the Parties executed a Memorandum of Understanding ("MOU") which, *inter alia*, outlines the Parties' agreement in principle regarding the proposed Settlement. Peter Decl. ¶ 7. As provided for in the MOU, on March 24, 2022, the *Cooper* Plaintiffs voluntarily dismissed the *Cooper* Action, without prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). Similarly, in accordance with the terms of the MOU, on May 4, 2022, the *Browning* Plaintiffs sought leave to amend the complaint in the *Browning* Action to include Plaintiff Cole, the *Cooper* Plaintiffs, and Plaintiff Judy Scaturro in this Action. That same day, the Court granted Plaintiffs leave to amend. On May 5, 2022, Plaintiffs filed a First Amended Complaint. On July 18, 2022, the Parties executed the Settlement Agreement, attached to the Dollar Decl. at Ex. A.

## III.    PRINCIPLE SETTLEMENT TERMS

The Settlement Class is defined as:

> All persons who purchased for personal consumption, and not for resale, any of the Products in the U.S., during the Class Period. Excluded from the Settlement Class shall be the Honorable Stephen R. Bough, the Honorable Kenneth M. Karas, the Honorable Stanley Blumenfeld, Jr., the Honorable Howard Sachs, counsel to the Parties, Mediator Jack T. Bangert, and their employees, legal representatives, heirs, successors, assigns, or any member of their immediate family; any government entity; A-B, any entity in which A-B has a controlling interest, any of A-B's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and any Persons who timely opt-out of the Settlement Class.

*Id.*, Ex. A ¶ 78. The Injunctive Relief Class is defined in a similar manner, except that class members may not opt out of the Injunctive Relief Class. *Id.* ¶¶ 55, 87. Under the terms of the Settlement Agreement, the Class Period is the period of time from January 1, 2018 through the date Preliminary Approval is granted. *Id.* ¶ 38.

4

Under the Settlement, Settlement Class members may seek $.10 - $.85 per Product purchased during the Class Period, depending on the size or unit type purchased. *Id.* ¶ 82.a. Settlement Class members may seek a refund for a maximum total refund of $21.25 per Household with Proof of Purchase. *Id.* ¶ 82.b. Settlement Class members may seek a maximum total refund of $9.75 per Household without Proof of Purchase. *Id.* ¶ 82.c. As part of the Settlement, A-B has also agreed to make changes to the marketing, labeling, and packaging of the Products, including the addition of the word "Malt Beverage" on the consumer facing panels of the Product packaging, and clear disclaimers on the website noting that each of the Products "Does not contain distilled spirits." *Id.* ¶ 84 (citing Exhibits 7-9 to the Settlement Agreement).

The class-wide release is tailored to the allegations in this Action. Upon the Effective Date of the Settlement, Settlement Class Members who do not submit a valid and timely Request for Exclusion shall release the following claims against A-B and the other Released Parties:

> Any claim, cross-claim, liability, right, demand, suit, petition, liability, right, matter, lawsuit, arbitration, obligation, damage, restitution, disgorgement, loss or cost, attorneys' fee, cost or expense, action or cause of action, and relief of every kind and description regarding the subject matter of the Action, including, but not limited to, compensatory, exemplary, statutory, punitive, restitutionary, expert or attorneys' fees and costs, whether past, present, or future, mature or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative, vicarious or direct, asserted or un-asserted, and whether based on federal, state or local law, statute, ordinance, rule, regulation, code, contract, tort, fraud or misrepresentation, common law, violations of any state's or territory's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, or other laws, unjust enrichment, any breaches of express, implied or any other warranties, or the Magnuson-Moss Warranty Act, or any other source, or any claim of any kind, in law or in equity, that the Releasing Party had or has, including assigned claims, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis or on behalf of the general public against any of the Released Parties that are based on, arising from, connected with, related to, or in any way involving the marketing, advertising, labeling, or packaging of any of the Ritas™ Brand Products that are, or could have been, alleged, asserted or described in the complaints or any amended complaints filed in the *Browning*, *Cooper*, or *Cole*

5

Actions. Excluded from the Released Claims is any claim for alleged bodily injuries arising out of use of the Ritas™ Brand Products.

*Id.* ¶ 70.

Epiq has been selected to provide notice to the Class and administer the Settlement. *Id.* ¶ 76; Peter Decl. ¶ 24. Prior to selecting Epiq, the Parties considered proposals from several other reputable administrators, but ultimately selected Epiq based on several factors, including Epiq's experience, cost, and notice plan proposal. Peter Decl. ¶ 25. Epiq, a well-qualified settlement administrator, has extensive experience in administering similar consumer class action settlements. Declaration of Cameron Azari ("Azari Decl.") ¶¶ 4-7. A-B will bear the costs of notice and administration. Dollar Decl. Ex. A ¶ 104 Additional information regarding the proposed Notice Plan and Claims Process is set forth in Section VI below.

Settlement Class Members have the right to object to the Settlement, subject to compliance with the procedures for objecting set forth in the Settlement. *Id.* ¶¶ 106-108. Additionally, Settlement Class Members can opt-out of the Settlement, subject to compliance with the procedures for opting out set forth in the Settlement; however, Settlement Class Members cannot opt out of the injunctive relief. *Id.* ¶¶ 87, 111-15.

Lastly, Plaintiffs may petition the Court for an award of reasonable attorneys' fees and costs in an amount of up to $2,100,000, and a $2,500 Class Representative Service Award to each of the six Plaintiffs, each to be paid by A-B separately from, and in addition to, the monetary relief afforded to Settlement Class Members. *Id.* ¶¶ 117-128. A-B retains the right to oppose such awards. *Id.* The Settlement Agreement, and Plaintiffs' support of the Settlement, are not conditioned upon the Court's approval of the above amounts. *Id.* ¶¶ 121, 126.

6

## IV. THE COURT SHOULD CERTIFY THE NATIONWIDE SETTLEMENT CLASS

"In the context of Rule 23(e), this Court may, upon request of the parties, certify a class solely for purposes of settlement after making a determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Risch v. Natoli Eng'g Co.,* No. 4:11CV1621 AGF, 2012 WL 3242099, at *1 (E.D. Mo. Aug. 7, 2012) (internal quotations omitted). Here, the Court should certify the Settlement Class and Injunctive Relief Class because Rule 23(a) and Rule 23(b)(2)-(3) are satisfied.

### A. The Numerosity Requirement – Rule 23(a)(1) – is Satisfied[5]

Rule 23(a)(1)'s numerosity requirement is met, evidenced in part by the fact that email addresses exist for hundreds of thousands of class members or potential class members. Azari Decl. ¶ 19. *Cooper v. Integrity Home Care, Inc.*, No. 4:16-CV-1293-DGK, 2018 WL 3468372, at *5 (W.D. Mo. July 18, 2018) ("The class size—approximately 775—meets the numerosity requirement.").

### B. The Commonality and Predominance Requirements – Rule 23(a)(2) and (b)(3)

Class certification requires there to be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). In this case, there are several questions of law or fact common to class,

---

[5] Although not an explicit requirement, courts in this Circuit have found that Rule 23(a) also has an implicit requirement that the class be "adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Scientific, Inc.*, 821 F.3d 992 (8th Cir. 2016). A class may be ascertainable when its members may be identified by reference to objective criteria. *Id.* Here, the settlement class is adequately defined and clearly ascertainable based on objective criteria – whether they have purchased one of the products at issue during a defined period of time. *See In re Pre-Filled Propane Tank Antitrust Litig.,* No. 14-02567-MD-W-GAF, 2019 WL 7160380, at *3 n.2 (W.D. Mo. Nov. 18, 2019) (finding that proposed settlement class was ascertainable when "the class is defined objectively to include any entity that purchased Filled Propane Exchange Tanks for resale, directly from one or more of the defendants, during a defined time period.")

7

including whether the representations made on the Products' packaging is likely to deceive a reasonable consumer. *See Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776, at *3 (W.D. Mo. June 11, 2015) ("Here, there are multiple questions of law or fact common to the class—i.e. whether Defendant misrepresented the gasoline sold; whether the marketing/labeling of the gasoline was false, misleading, deceptive, or unfair[.]"). Thus, the commonality requirement is satisfied.

The proposed Settlement Class also satisfies Rule 23(b)(3)'s requirement that common issues predominate. "At the core of Rule 23(b)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010). When presented "with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Here, the question of whether reasonable consumers were misled is a common question to the class that predominates over any potential individual questions. It is also a question that can be proven through common evidence through documentary evidence (including the Products' packaging and marketing materials), and expert survey evidence. *Claxton,* 2015 WL 3648776, at *4. Accordingly, Rule 23(b)(3) is satisfied.[6]

---

[6] The superiority requirement under Rule 23(b)(3) is also satisfied. In this case "class treatment is superior to other options for resolution of the controversy because the relief sought for each proposed Settlement Class member is small, such that, absent representative litigation, it would be infeasible for members to redress the wrongs done to them." *Rawa v. Monsanto Co.*, No. 4:17CV01252 AGF, 2018 WL 2389040, at *6 (E.D. Mo. May 25, 2018). For the same reason, class members have "little incentive to individually control the prosecution." *Claxton*, 2015 WL 3648776, at *5. Moreover, it is desirable to concentrate litigation in this forum, *see* Fed. R. Civ. P. 23(b)(3)(C), because A-B's principal place of business is in this State, and a substantial part of the events giving rise to the claims occurred in this State. Additionally, this Court now has substantial familiarity with the claims and defenses.

**C.      The Typicality Requirement – Rule 23(a)(3) – is Satisfied**

Under Rule 23(a)(3), Plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is "fairly easily met" and is satisfied when "the claims or defenses of the representatives and the members of the class . . . are based on the same legal or remedial theory." *Claxton*, 2015 WL 3648776, at *3 (quotation omitted). Here, class members were subjected to the same misleading and deceptive conduct as Plaintiffs when they all purchased the Products with the same misrepresentations, and all suffered economic injury because the Products uniformly did not contain distilled spirits or wine. As such, typicality is satisfied.

**D.      The Adequacy Requirement – Rule 23(a)(4) – is Satisfied**

Rule 23(a) also requires that the representative plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is a twofold requirement—"(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Lane v. Lombardi*, No. 2:12–cv–4219–NKL, 2012 WL 5462932, at *3 (W.D. Mo. Nov. 8, 2012) (quotation omitted). Here, Plaintiffs' interests align with those of other class members, as all class members have an interest in determining whether A-B acted in an unlawful manner by mislabeling the Products and injuring class members as a result. *Claxton*, 2015 WL 3648776, at *4. Moreover, nothing demonstrates that Plaintiffs or Class Counsel have a conflict-of-interest with other class members or that they will have difficulty prosecuting the action in a proper manner. *Id.* Lastly, Class Counsel are adequate because they have extensive experience in class action litigation and have vigorously pursued these claims throughout this litigation. Dollar Decl. ¶¶ 11-12, 15; Peter Decl. ¶¶ 12-15, 17. Accordingly, the adequacy requirement is met.

9

### E. Certification Of A Rule 23(b)(2) Injunctive Relief Class Is Also Warranted

Additionally, Plaintiffs seek to conditionally certify an Injunctive Relief Class under Rule 23(b)(2). Rule 23(b)(2) permits the court to certify a class where the party against whom the relief is sought "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole[.]" Because A-B continues to market and sell the Products with the deceptive packaging, A-B has "acted . . . on grounds that apply generally to the class . . . ." such that injunctive relief is appropriate. As such, conditional certification under Rule 23(b)(2) is warranted.

## V. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

A court should grant preliminary approval where the parties show "that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B); *Holt v. CommunityAmerica Credit Union*, No. 4:19-CV-00629-FJG, 2020 WL 12604383, at *1 (W.D. Mo. Sept. 4, 2020) ("in deciding whether to grant preliminary approval to a proposed settlement, the Court evaluates two issues: (1) whether the court will likely be able to grant final approval to the settlement as a fair, reasonable, and adequate compromise; and (2) whether the court will likely be able to certify the class for purposes of entering judgment on the settlement.") (quotations omitted). The goal of preliminary approval is for the Court to determine whether notice should be sent to the class, not to make a final determination of the settlement's fairness. Thus, "district courts have developed a jurisprudence whereby they undertake some review of the settlement at preliminary approval, but perhaps just enough to ensure that sending notice to the class is not a complete waste of time." 4 Newberg and Rubenstein on Class Actions § 13:10 (5th ed.)

As amended in 2018, Rule 23(e)(2) directs courts to consider four factors in determining the fairness and reasonableness of a proposed settlement, namely whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was

10

negotiated at arm's length; (C) the relief provided for the class is adequate; [and] (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). Following the 2018 amendments, courts in this Circuit have recognized that the Rule 23(e)(2) factors "were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement," but rather are intended "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144-SMR-SBJ, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) (quoting Advisory Committee Notes on 2018 Amendments to Fed. R. Civ. P. 23). "The Eighth Circuit has set forth its own largely overlapping test to ascertain the fairness and adequacy of a proposed settlement." *Fath v. Am. Honda Motor Co.*, No. 18-CV-1549 (NEB/LIB), 2019 WL 6799796, at *2 (D. Minn. Dec. 13, 2019). Courts in the Eighth Circuit have traditionally considered the factors of *Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988), namely: (1) "the merits of the plaintiff's case[] weighed against the terms of the settlement," (2) "the defendant's financial condition," (3) "the complexity and expense of further litigation," and (4) "the amount of opposition to the settlement." *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting *Van Horn*, 840 F.2d at 607). As discussed below, each of the *Van Horn* and Rule 23(e)(2) factors is met.

A. **Rule 23(e)(2)(A) - Plaintiffs and Class Counsel Have Adequately Represented the Class**

As described above and below, Class Counsel and Plaintiffs have adequately represented the interests of the Class and will continue to do so. Class Counsel have extensive experience litigating complex consumer class actions and have successfully represented the Class. Dollar Decl. ¶¶ 11-12, 15; Peter Decl. ¶¶ 12-15, 17. Moreover, there are no conflicts between Class Counsel, Plaintiffs, and the Class. As such, this factor is met.

11

**B.     Rule 23(e)(2)(B) – The Settlement Is the Product of Arms'-Length, Informed Negotiations**

As courts in this Circuit have recognized, a settlement will enjoy a presumption of fairness when, as here, a settlement is the product of arms-length negotiations conducted by experienced counsel, knowledgeable in complex class litigation. *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002). Participation by a neutral third party also supports a finding that the agreement is negotiated at arms-length and non-collusive. *Heldt v. Payday Fin., LLC*, No. 3:13-CV-03023-RAL, 2016 WL 96156, at *6 (D.S.D. Jan. 8, 2016) ("Courts are less likely to find collusion when . . . negotiations were conducted by a third-party mediator.") Here, the Settlement is the result of over eight months of arm's-length, contentious negotiations among the Parties, with the assistance of an experienced mediator, over the course of two full-day mediation sessions and numerous follow up discussions. Dollar Decl. ¶¶ 4-7. Moreover, both before and during the eight months of settlement discussions, Class Counsel ensured that they had adequate discovery and other information necessary to appropriately weigh the strengths and weakness of Plaintiffs' claims, as well as to determine the appropriate parameters of a class-wide settlement.

Moreover, Class Counsel have considerable experience in litigating consumer class actions that are similar in size, scope, and complexity to this case, and are thus capable of assessing the likelihood of success, the damages potential, and inherent risks and expense of litigation. Dollar Decl. ¶¶ 11-12, 16; Peter Decl. ¶¶ 12-16. In light of the foregoing, Plaintiffs and their counsel strongly believe that the Settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class. Dollar Decl. ¶ 16; Peter Decl. ¶ 18. Moreover, Class Counsel negotiated attorneys' fees and costs only ***after*** reaching agreement on the relief for the Class. Dollar Decl. ¶ 7. This is indicative of a fair and arm's-length settlement process. *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment (courts may look at "the treatment of any award of attorneys'

12

fees, with respect to both the manner of negotiating the fee award and its terms."); *Cleveland v. Whirlpool Corp.*, No. 20-cv-1906 (WMW/KMM), 2021 WL 5937403, at *7 (D. Minn. Dec. 16, 2021) (finding "no evidence of collusion or that Class Counsel placed their interests above those of the Settlement Class" when "the material terms of the Settlement were agreed to prior to the Parties' discussion of attorneys' fees, costs and expenses[.]"); *Heilman v. Perfection Corp.*, 93 F. Supp. 2d 1311, 1312–13 (W.D. Mo. 2000) (same).

### C.      Rule 23(e)(2)(C) – The Relief Provided For The Class Is Adequate

In determining whether the relief provided is adequate, Rule 23(e)(2)(C) directs courts to consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; [and] (iii) the terms of any proposed award of attorney's fees, including timing of payment."[7] Applied here, each sub-factor demonstrates that the relief provided to Settlement Class is adequate.

#### 1.      The Costs, Risks, And Delay Of Trial And Appeal[8]

The Settlement's terms are adequate when weighed against the costs, risks, and delay of trial and appeal in this matter. Although Plaintiffs believe they have a strong case on the merits — illustrated by, among other things, their success in defeating two motions to dismiss in this and the *Cooper* Action — Plaintiffs recognize that there are obstacles to succeeding on their claims. The denial of class certification is a significant risk, and so is prevailing at summary judgment and then at trial. *Claxton*, 2015 WL 3648776, at *6 ("Future litigation in this proposed class action is likely

---

[7] Rule 23(e)(2)(C)(iv) also directs courts to consider "any agreement required to be identified under Rule 23(e)(3)." The Parties have not entered into any agreement that must be identified under Rule 23(e)(3) other than the Settlement Agreement. Dollar Decl. ¶ 10.

[8] The first and third *Van Horn* factors (i.e., "the merits of the plaintiff's case[] weighed against the terms of the settlement" and "the complexity and expense of further litigation") overlap with Rule 23(e)(2)(C)(i). *See Swinton v. SquareTrade, Inc.,* 454 F. Supp. 3d 848, 861 (S.D. Iowa 2020).

to involve a dispute concerning class certification, a second phase of discovery, expert analyses related to the allegedly contaminated fuel, administrative delays in collecting information and deposing class members, extensive dispositive motions, a lengthy trial, and appellate review.")  A-B has and would likely continue to argue that reasonable consumers are not likely to be deceived by the labeling and packaging of the Products, and that even if they were, individualized issues of consumer deception, materiality, and damages preclude class certification. Moreover, while the Parties were negotiating, A-B presented Class Counsel with a preliminary damages analysis purportedly demonstrating that consumers suffered little to no damages.  Peter Decl. ¶ 6. Although Plaintiffs disagree, the risks of succeeding and recovering for the Class are inherent.

Moreover, continuing to litigate this matter would be complex and expensive. "Class actions, in general, place an enormous burden of costs and expense upon parties." *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (internal citation omitted). A-B "has alleged numerous legal and factual defenses that, absent settlement, will require full discovery, including numerous depositions, briefing, and additional pre-trial work"; moreover, "[c]lass certification, expert discovery, and summary judgment motions are just a few of the matters that would ensue, in addition to a trial and possible appeals," all of which may result in "thousands more hours of attorney time." *Id*. Class Counsel's view that this factor favors settlement is "entitled to deference," especially in light of their "significant experience in class actions and complex litigation." *Id.* (citing *DeBoer v. Mellon Mortg. Co*., 64 F.3d 1171, 1178 (8th Cir. 1995)).

In light of these substantial risks, the monetary relief obtained represent a favorable recovery for the class. Indeed, based on the preliminary damages analysis conducted by Plaintiffs' consulting economist, Class Counsel estimates that Settlement Class members will be recovering, on average, approximately 15%-20% of their maximum price premium trial damages per Product.

Peter Decl. ¶¶ 20-22. This is adequate recovery, especially in light of A-B's competing analysis demonstrating that consumers suffered little to no damages. Indeed, as courts routinely recognize, "a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 708 (E.D. Mo. 2002) (recovery of 3.7% of best-case damages estimate is fair and adequate); *Ray v. Lundstrom*, No. 4:10CV3177, 2012 WL 5458425, at *4 (D. Neb. Nov. 8, 2012) (recovering 13.5% of total damages represented a reasonable recovery); *Keil*, 862 F.3d at 696 (approving "settlement fund represent[ing] 27 percent of the maximum possible full verdict at trial" in light of "substantial risks as to whether class counsel could successfully certify and maintain a class, let alone prevail at trial and recover the full measure of damages they sought") (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."))

Moreover, in addition to the monetary relief, A-B has agreed to make meaningful changes to its labeling, packaging, and marketing of the Products. Dollar Decl., Ex. A ¶¶ 84-85; *Keil*, 862 F.3d at 697 ("[E]ven if 97 percent of the class did not exercise their right to share in the fund . . . assuming that these class members continue to purchase pet food, they will benefit from the additional injunctive relief that the settlement provides."). As such, the relief obtained for the class is adequate when compared to the risks, costs, and delay associated with protracted litigation.

2.    The Effectiveness Of Any Proposed Method Of Distributing Relief

Class Members will each be entitled to a payment of between $.10 - $.85 per Product, up to $21.25. Class Members are only required to submit a Claim Form with basic questions about class membership in order to receive compensation. Dollar Decl., Ex. A ¶ 34, Exs. 1-2. The Claim Form is written in clear and concise language and can be submitted on the settlement website or

15

by mail. *Id*. All Settlement Payments to class members will be in the form of cash payments via a check or electronic payment, whichever option the class member elects. *Id*. ¶ 82.d. This procedure is claimant-friendly, efficient, proportional, and reasonable.

### 3.     The Terms and Timing Of Any Proposed Award Of Attorney's Fees

Although Class Counsel will more extensively brief their requested attorneys' fees and cost in their forthcoming Fee Application, there is no indication that the anticipated award is excessive in light of the amount made available to the class, as discussed above. *Cirese Inv. Co. v. Qwest Commc'ns Co., LLC*, No. 4:00-0042-CV-W-HFS, 2013 WL 12284915, at *2 (W.D. Mo. Jan. 18, 2013) (basing fee award on amount made available to the class) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480–81 (1980)). Moreover, any award of attorneys' fees will reflect the novel and complex nature of this matter, as well as the risk assumed by Class Counsel in investing years of labor into obtaining relief for the Class without guarantee of return. Lastly, although the Settlement Agreement contains a "quick pay" provision, quick pay provisions are customary to discourage meritless objections made to hold a settlement hostage. *See Rawa v. Monsanto Co*., No. 4:17CV01252 AGF, 2018 WL 2389040, at *9 (E.D. Mo. May 25, 2018), *aff'd*, 934 F.3d 862 (8th Cir. 2019) (approving quick-pay provision) (citing cases).

### D.     Rule 23(e)(2)(D) – Class Members Are Treated Equitably

The Settlement treats class members equitably relative to each other because it provides for equal relief to class members. Specifically, each class member will be eligible to recover the same relief: between $.10 - $.85 per Product, up to a maximum recovery of $21.25 depending on if proof of purchase is submitted. Moreover, the fact that those with proof of purchase can recover for more units does not undermine a finding of equitability. *Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2019 WL 6134910, at *13 (N.D. Cal. Nov. 19, 2019) (holding that class members were treated equitably, even when those with proof of purchase could recover more).

16

E.     **The Second *Van Horn* Factor – A-B's Financial Condition**

Courts in the Eighth Circuit frequently consider a defendant's financial condition in determining whether approval of a class settlement is appropriate. *Swinton,* 2019 WL 617791, at *5. Given A-B's size and multi-national presence, there is "no indication that Defendant[] will be unable to pay, or incur undue hardship as a result of, the settlement." *Risch*, 2012 WL 3242099, at *3. But while A-B's "good financial standing . . . would permit it to adequately pay for its settlement obligations," A-B could just as easily use the Settlement funds to "continue with a spirited defense." *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015).

F.     **The Fourth *Van Horn* Factor - No Opposition To The Settlement**

At this juncture, there has been no opposition to the Settlement.

VI.     **THE COURT SHOULD APPROVE THE NOTICE PLAN AND APPOINT EPIQ AS THE SETTLEMENT ADMINISTRATOR**

Due process and Rule 23 require that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Parties have agreed to retain Epiq as the Settlement Administrator, subject to Court approval. Epiq's qualifications and the proposed Notice Plan are outlined in the Azari Declaration. As set forth therein, Epiq is experienced in the design and implementation of notice and administration programs of all sizes and types, including in consumer class actions such as this case. Accordingly, Plaintiffs request the appointment of Epiq as the Settlement Administrator.

The proposed forms of notice consist of Direct Notice, Long Form Notice, and Summary Notice, attached as Exs. 3-6 to the Settlement Agreement, respectively. Dollar Decl., Ex. A. All notices are written in plain language and apprise Settlement Class Members of the information required by Rule 23. Specifically, they provide (1) basic information about the lawsuit, (2) a

17

description of the benefits provided by the Settlement, (3) an explanation of how Settlement Class Members can obtain the settlement benefits, (4) an explanation of how they can exercise their rights to request exclusion from or object to the Settlement, (5) an explanation that any claims against A-B that could have been litigated in this action will be released if the Settlement Class Member does not request exclusion from the Settlement, and (6) the Final Approval hearing date. Accordingly, the Notice forms satisfy the content requirements of Rule 23(c).

As set forth in the Azari Declaration, the Notice Plan was developed to reach at least 70% of the Settlement Class, on average 2.4 times each (Azari Decl. ¶ 25), which satisfies the reach standard set forth in similar matters and in the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010). *See e.g.*, *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, No. 16-02709-MD-W-GAF, 2021 WL 5546459, at *2 (W.D. Mo. Feb. 8, 2021), & ECF No. 257. The Notice Plan will consist of direct and publication notice. Direct Notice will be provided via email to every person for whom either Party has or obtains an e-mail address, and who may be a potential class member. Azari Decl. ¶¶ 18-21. Moreover, direct notice will also be sent via postcard to those for whom email notice was undeliverable after multiple attempts. *Id.* ¶ 22 Specifically, A-B has provided email addresses for some individuals who may be Settlement Class Members. *Id.* ¶¶ 19-20; Peter Decl. ¶ 10. Moreover, Class Counsel has subpoenaed and obtained customer contact information for hundreds of thousands of actual and potential class members, from five of the top selling third party retailers of the Products: Walmart/Sam's Club, 7-11/Speedway, BevMo!, Casey's, and Meijer. Peter Decl. ¶ 11; Azari Decl. ¶¶ 18-19. In addition, Publix is in the process of producing customer data records. *Id.*

The Notice Plan will also include publication notice, which will be disseminated in

18

multiple formats consisting of: (1) a 1/3 page ad that will appear twice in the national edition of the weekly magazine *People*; (2) internet banner and video ads that will generate more than 227.8 million impressions nationwide; (3) a dedicated case-specific Settlement Website where the Notices and other court filings will be posted; (4) a press release issued to approximately 5,000 general media (print and broadcast) and approximately 4,500 websites, online databases, internet networks, and social networking media; and (5) a toll-free number with live support which class members can use to call Epiq to obtain information about the Settlement. Azari Decl. ¶¶ 25-40. Accordingly, the method of providing notice satisfies the Rule 23(c)(2)(B) and due process requirements. *Pollard v. Remington Arms Co.,* 320 F.R.D. 198, 212 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018) ("notice via the internet in the form of banner advertisements (combined with all the other methods of notifying potential class members) was another reasonable component of the notice plan.")

Lastly, Epiq will separately provide notice of the Settlement to the appropriate State and Federal officials, in compliance with 28 U.S.C. § 1715(b), within ten days of filing date of this Motion. Azari Decl. ¶ 10.

## VII.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Rule 23(g) requires a court to appoint class counsel when it certifies a class. In appointing class counsel, the court considers several factors: (1) work done by counsel in identification or investigation of the claims in the action; (2) counsel's experience; (3) counsel's knowledge of the applicable law; and (4) counsel's resources committed to representing the proposed class. Fed. R. Civ. P. 23(g)(1)(A). Each of these factors militate in favor of appointing Dollar, Burns, Becker, & Hershewe L.C. and Faruqi & Faruqi, LLP as Class Counsel. First, proposed Class Counsel spent a significant amount of time identifying and investigating Plaintiffs' claims before commencing the actions. Peter Decl. ¶ 4. Second, as further discussed above and in counsel's declarations,

proposed Class Counsel is experienced in the litigation, certification, trial, and settlement of multi-state consumer class action cases like this one. *Id.* ¶¶ 12-15; Dollar Decl. ¶¶ 12. In negotiating this Settlement, proposed Class Counsel had the benefit of years of relevant experience and a familiarity with the facts of this case and the substantive case law at issue. *Id.* Finally, both firms have well-regarded practices that are currently litigating dozens of class action cases in state and federal courts throughout the nation, and they have devoted substantial resources to representing the Class. Peter Decl. ¶ 12-16; Dollar Decl. ¶¶ 12-15. Thus, the Court should appoint Plaintiffs' Counsel as Class Counsel for the class.

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully ask that the Court enter an Order: (1) preliminarily approving the settlement, (2) certifying the Settlement Class and Injunctive Relief Class for settlement purposes, (3) preliminarily appointing Dollar, Burns, Becker, & Hershewe L.C. and Faruqi & Faruqi, LLP as Class Counsel, and Plaintiffs as Class Representatives for settlement purposes; (4) approving the form and manner of notice; (5) appointing Epiq as the Settlement Administrator; and (6) scheduling a Final Approval Hearing and related events. Plaintiffs have conferred with Defendant Anheuser-Busch, LLC ("A-B") and A-B is **<u>unopposed to the relief requested in this motion</u>**.

Dated: July 18, 2022

/s/Tim E. Dollar
Tim E. Dollar, Missouri Bar No. 33123
**DOLLAR BURNS & BECKER, L.C.**
1100 Main Street, Suite 2600
Kansas City, MO 64105
Telephone: (816) 876-2600
Facsimile: (816) 221-8763
Email: timd@dollar-law.com

Timothy J. Peter (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
1617 John. F. Kennedy Blvd., Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771

Benjamin Heikali (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
1901 Avenue of the Stars, Ste. 1060
Los Angeles, CA 90067
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

*Counsel for Plaintiffs*